1  LYNN R. FIORENTINO (SBN 226691)
   lynn.fiorentino@afslaw.com
2  SUSANNE BONIADI (SBN 341512)
   susanne.boniadi@afslaw.com
3  **ARENTFOX SCHIFF LLP**
   555 S. Flower St., 43rd Floor
4  Los Angeles, CA  90071
   Telephone:    213.629.7400
5  Facsimile:    213.629.7401

6  Attorneys for Defendant
   CURIOSITYSTREAM INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 CHRISTOPHER MITCHENER, individually       Case No. 5:25-cv-01471
   and on behalf of all others similarly situated,
12                                            **CLASS ACTION**
              Plaintiff,
13                                            **DEFENDANT CURIOSITYSTREAM
      v.                                      INC.'S MEMORANDUM OF POINTS
14                                            AND AUTHORITIES IN SUPPORT OF
   CURIOSITYSTREAM INC., a Delaware           ITS MOTION TO DISMISS
15 corporation,                               PLAINTIFF'S COMPLAINT**

16            Defendant.                       *[Filed concurrently with Notice of Motion,*
                                              *Declaration of Lynn R. Fiorentino and*
17                                            *[Proposed] Order]*

18                                            Date:          May 6, 2025
                                              Time:          10:00 am
19                                            Courtroom:     3, Fifth Floor
                                              Judge:         Virginia K. DeMarchi
20

21

22                                            Date Action Filed: February 12, 2025

23

24

25

26

27

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                - 1 -          DEFENDANT CURIOSITYSTREAM INC.'S
                                                     MEMORANDUM OF POINTS AND
                                                     AUTHORITIES IN SUPPORT OF ITS MOTION
                                                     TO DISMISS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................- 9 -

II.     STATUTORY FRAMEWORK ...............................................................- 12 -

III.    PLAINTIFF'S BOILERPLATE ALLEGATIONS ....................................- 18 -

IV.     STANDARD OF REVIEW ......................................................................- 19 -

V.      THE COURT LACKS JURISDICTION OVER CURIOSITYSTREAM....- 20 -

    A.    General Jurisdiction Does Not Exist Over CuriosityStream............................- 20 -

    B.    Specific Jurisdiction Does Not Exist Over CuriosityStream ...........................- 21 -

VI.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST CURIOSITYSTREAM........- 26 -

    A.    Plaintiff Has Not Alleged Any Injury-In-Fact And Lacks Standing.................- 27 -

    B.    The Trap and Trace Law Expressly Only Covers Communications In
Transit And Third-Party Interception...............................................................- 29 -

    C.    Pen Registers and Trap and Trace Devices Are Limited To Telephones. ........- 31 -

    D.    Allowing Plaintiff's Complaint To Proceed Would Create An Untenable
Conflict With The CCPA. .................................................................................- 33 -

VII.    CONCLUSION .........................................................................................- 34 -

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*Animal Legal Def. Fund. v. Wasden,*
  878 F.3d 1184, 1203-04 (9th Cir. 2018). ................................................................ 27

6

7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................. 19

8

*Beckles v. U.S.,*
  580 U.S. 256 (2017) ................................................................................................. 34

9

10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................. 19

11

12

*Boschetto v. Hansing*
  539 F.3d 1011 (9th Cir. 2008) ................................................................................. 22

13

*Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco County*
  (2017) 137 S. Ct. 1773 ............................................................................................. 26

14

15

*Calder v. Jones*
  (1984) 465 U.S. 783 ................................................................................................. 22

16

17

*Carroll v. The J.M. Smucker Company,*
  No. 3:22-cv-08952-WHA, 2023 WL 4053796 (N.D. Cal. Jun 15, 2023)........................ 21, 24

18

*City of Chicago v. Morales,*
  527 U.S. 41 (1999) ................................................................................................... 34

19

20

*Clark v. Martinez,*
  543 U.S. 371 (2005) ................................................................................................. 20

21

22

*Cline v. Reetz-Laiolo,*
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................................................... 26

23

*Compulink Management Center, Inc. v. St. Paul Fire and Marine Ins. Co.,*
  169 Cal.App.4th 289 (2008)..................................................................................... 30

24

25

*Daghaly v. Blommingdales.com, LLC,*
  2024 WL 5134350 (9th Cir. Dec. 17, 2024) ........................................................... 28

26

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014)................................................................................................. 20

27

28

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002)............................................................................ 22

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades
    Council*,
    485 U.S. 568 (1988)........................................................................................... 27

*Electro Scan, Inc. v. Henrich*
    (E.D. Cal. Mar. 21, 2019) No. 218CV02689JAMEFB, 2019 WL 1299010 ......... 21

*Gabrielli v. Insider, Inc.*,
    No. 24-CV-01566 (ER), 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025) ....... 28

*Gilmore Bank v. AsiaTrust New Zealand Ltd.*
    (2014) 223 Cal. App.4th 1558 ........................................................................... 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)........................................................................................... 20

*In re Google Inc.*,
    No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)............ 26

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)........................................................................................... 34

*Greenstein v. Noblr Reciprocal Exch.*,
    585 F. Supp. 3d 1220 (N.D. Cal. 2022) ............................................................. 28

*Hale v. S. California IPA Med. Grp., Inc.*,
    86 Cal. App. 4th 919 (2001)............................................................................... 30

*Hasson v. FullStory, Inc.*,
    114 F.4th 181 (3d Cir. 2024)........................................................................ 22, 24

*Heiting v. Marriott Int'l, Inc.*,
    743 F. Supp. 3d 1163, 1171-72 (C.D. Cal. 2024) .............................................. 21

*Helicopteros Nacionales de Colombia S.A. v. Hall*
    (1984) 466 U.S. 408 .................................................................................... 20, 23

*Hughes v. Vivint, Inc.*,
    2024 WL 5179916 (C.D. Cal. 2024).................................................................. 28

*Jones v. Bloomingdales.com, LLC*,
    No. 23-3304, 2024 WL 5205528 (8th Cir. Dec. 24, 2024).................................. 28

*Konop v. Hawaiian Airlines, Inc*.,
    302 F.3d 868 (9th Cir. 2002)............................................................................. 14

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

*Leocal v. Ashcroft*,
   543 U.S. 1 (2004) ................................................................................................ 20

*Licea v. Caraway Home Inc.*,
   No. 22-CV-1791-JGB-SHKX, 2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) ........ 18

*Licea v. Hickory Farms LLC*,
   No. 23STCV26148, 2024 WL 1698147 (Cal.Super. Mar. 13, 2024) ................... 32

*Lindsay-Stern v. Garamszegi*,
   2016 WL 11745948 (N.D. Cal. Oct. 13, 2016) ................................................... 31

*MA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) ............................................................................ 24

*Massie v. Gen. Motors Co.*,
   2021 WL 2142728 (E.D. Cal. May 26, 2021) ......................................... 21, 23, 24

*Matus v. Premium Nutraceuticals, LLC*,
   715 F. App'x 662 (9th Cir. 2018) ................................................................. 22, 25

*Mejia v. Reed*
   (2003) 31 Cal. 4th 657 ........................................................................................ 19

*Mejia v. Reed*
   (2003) 31 Cal.App.4th 657 ................................................................................. 13

*Mendoza v. JPMorgan Chase Bank, N.A.*,
   6 Cal.App.5th 802 (2016) ................................................................................... 28

*Mikulsky v. Noom*,
   682 F.Supp.3d 855, 867–68 (S.D. Cal. 2023) .................................................... 25

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ............................................................................... 31

*NovelPoster v. Javitch Canfield Grp.*,
   140 F.Supp.3d 938 (N.D. Cal. 2014) ................................................................. 30

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ............................................................................ 19

*People v. Avery*
   (2002) 27 Cal. 4th 49, 58 ................................................................................... 20

*People v. Cho*,
   No. E049243, 2010 WL 4380113 (Cal. Ct. App. Nov. 5, 2010) .............. 14, 15, 26

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471    - 5 -

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

*People v. Larkin*,
    194 Cal. App. 3d 650, 653 n.2 (1987) ....................................................................... 16

*People v. Nakai*
    (2010) 183 Cal. App. 4th 499 ........................................................................... 14, 26

*Powell v. Union Pac. R. Co.*,
    864 F. Supp. 2d 949 (E.D. Cal. 2012) ...................................................................... 13

*Ramos v. Garcia*,
    248 Cal. App. 4th 778 (2016) ................................................................................. 30

*Ranza v. Nike, Inc.*
    (9th Cir. 2015) 793 F.3d 1059 ............................................................................... 21

*Rodriguez v. Fountain9, Inc.*,
    No. 24STCV04504, 2024 WL 3886811 (Cal.Super. July 09, 2024) ......................... 28

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894, 898 (1975) ....................................................................... 14, 30

*Rosenthal v. Bloomingdales.com, LLC*
    (1st Cir. 2024) 101 F.4th 90 ............................................................................. 21, 24

*Sacco v. Mouseflow, Inc.*,
    No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361 (E.D. Cal. Sept. 30, 2022) ......... 25

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ..................................................................... 25

*Schwarzenegger v. Fred Martin Motor Co.*
    (9th Cir. 2004) 374 F.3d 797 ........................................................................... 22, 26

*Shapiro v. United States*,
    335 U.S. 1 (1948) .............................................................................................. 16, 31

*Smith v. Maryland*,
    442 U.S. 735 (1979) .............................................................................................. 16

*Steilberg v. Lackner*
    (1977) 69 Cal. App. 3d 780 ................................................................................... 12

*Tauler Smith LLP v. JPMorgan Chase Bank*
    (C.D. Cal., filed June 13, 2024) Civ. No. 2:24-cv-05013-ODW-AWW .................. 10

*Tavernetti v. Superior Court*
    (1978) 22 Cal.3d 187 ............................................................................................. 13

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471    - 6 -

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

*In re The Application of the United States of America for an Order Authorizing the use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) ............................................................................................................. 9, 16

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
813 F. App'x 316 (9th Cir. 2020) ........................................................................ 25

*Valenzuela v. Alexander Wang, LLC*,
23STCV12422 (L.A. Superior Ct., Dec. 27, 2023).............................................. 13

*Vita v. New England Baptist Hosp.*,
494 Mass. 824, 243 N.E.3d 1185 (2024) ............................................................ 12

*Vons Companies, Inc. v. Seabest Foods, Inc.*
(1996) 14 Cal.4th 434 ......................................................................................... 20

*Warden v. Kahn*
(1979) 99 Cal. App. 3d 805................................................................... 13, 14, 20

**Statutes**

18 U.S.C. § 2258A(b)(1) ..................................................................................... 16

18 U.S.C. § 3127(3)(4) ........................................................................................ 15

Cal. Gov't Code § 8231.18(c)(3)(A)(iv) ............................................................ 16

Cal. Penal Code § 637.2(a) ................................................................................. 27

Cal. Penal Code § 638.50(c) ............................................................................... 30

Civ. Code § 1798.140 ................................................................................... 12, 33

Fed. Rule of Civ. P. 12(b)(2) .............................................................................. 19

Penal Code § 538.51 ............................................................................... 17, 29, 30

Penal Code § 538.52 ........................................................................................... 17

Penal Code § 538.53 ........................................................................................... 17

Penal Code § 629 ................................................................................................. 29

Penal Code § 629.51 ..................................................................................... 17, 29

Penal Code § 630 ................................................................................................. 13

*Penal Code § 630.50* ..................................................................................... 17, 29

Penal Code § 632 ............................................................................... 13, 14, 26

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

Penal Code § 638.50 ..................................................................... 17, 29, 31, 32

Penal Code § 638.51 .................................................................................. *passim*

Penal Code § 638.52 .................................................................................. *passim*

Penal Code § 638.53 .................................................................................. *passim*

Penal Code § 638.54 ................................................................................. 31, 32

**Other Authorities**

Assembly Bill 929 .............................................................................................. 15

California Consumer Privacy Act ....................................................................... *passim*

California Invasion of Privacy Act .................................................................... 10

CCPA § 7012(c) ................................................................................................. 12

Choice of Law .................................................................................................... 23

CIPA § 631 .............................................................................................. 13, 14, 20

CIPA § 638.50 .................................................................................................... 29

CIPA § 638.51 .................................................................................................... 29

CIPA § 638.52 .................................................................................................... 29

CIPA § 638.53 .................................................................................................... 29

Federal Wiretap Act ........................................................................................... 31

Massachusetts Invasion of Privacy Statute ........................................................ 24

Massachusetts Wiretapping Act .......................................................................... 24

RICO ................................................................................................................... 10

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                          - 8 -

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case is hardly unique.  It is the latest in an avalanche of cookie-cutter complaints filed by Plaintiff's counsel, Tauler Smith LLP ("Tauler Smith"), under a statute that was enacted *solely* for the purpose of *authorizing* law enforcement agencies to *intercept* the "signaling information" – but not the content – of telephone calls.[1]  What does this case have to do with court-authorized law enforcement interception of the telephone numbers called by potential criminals?  Absolutely nothing.

Instead, this case effectively seeks to criminalize the Internet through a bait and switch. That is, it concerns the *reception* – not the *interception* – of online data exchanges and common website analytics tools used by website operators, under the novel theory that these technologies amount to illegal "trap and trace" devices under section 638.51 of the California Invasion of Privacy Act ("CIPA").  How common is it for website operators to obtain "signaling information" and use analytics tools – as expressly authorized under the California Consumer Privacy Act ("CCPA"), the actual law that governs the online privacy issues at here?  The Court's PACER website admittedly "collect[s] and store[s]" every visitor's "IP address" and the "type of browser and operating system used to access the pacer.uscourts.gov site."[2] The Los Angeles County Superior Court, where this action was originally filed, discloses that it engages in "USER TRACKING AND DATA CAPTURE PRACTICES," expressly including the collection of "IP addresses" "to help us improve our web sites."[3]  In addition, the websites of this Court, the Santa Clara County Superior Court, and the Supreme Court of California all use Google Analytics, which allows Google to be sent the same data sets as TikTok, such as visitor browser and device information.[4] The Governor's

---

[1]    *See* Declaration of Lynn Fiorentino ("Fiorentino Decl."), ¶ 11, Ex. J. ("AB 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations.  The bill will require law enforcement officers to obtain a court order").

[2]    *See* https://pacer.uscourts.gov/privacy, *see also* Fiorentino Decl., ¶ 2, Ex. A.

[3]    *See* https://www.lacourt.org/website/HO0050.aspx.

[4]    *See* https://support.google.com/analytics/answer/11593727?hl=en.  Google further publicly discloses that its Google Analytics cookie also collects various demographic data such as age range, gender, city, etc., by default.  *See*

DEFENDANT CURIOSITYSTREAM INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

official website openly incorporates a TikTok plugin,[5] and deploys Google Analytics and the Meta Pixel, the latter of which similarly allows Meta to identify specific Facebook and/or Instagram users that have visited the Governor's site.[6]  Both the California Attorney General and the California Privacy Protection Agency – the government agencies literally tasked with protecting Californians' privacy rights, including under CIPA – also use Google Analytics and the Meta Pixel on their respective websites without any conspicuous disclosure.[7]  So too does the Congressman Khanna on his official and personal websites,[8] and the U.S. Attorney's Office.[9]

Last but certainly not least, Tauler Smith itself also uses Google Analytics to track visitors on its own website.[10]  Indeed, Tauler Smith discloses through its website privacy policy – no differently than the thousands[11] of other businesses this firm is pursuing – that simply "[b]y using our Website, you agree to the use of cookies on your browser" and this will entail the automatic collection of "the website you came from[], the type of browser you use, the device you connected from, the date and time of your access, and other data" including "your IP address," "your email address, phone number, and social media account information… . The cookies allow the Website

---

https://support.google.com/analytics/answer/9268042?sjid=4097383955495352501-NA&visit_id=638621968629060317-124154985&rd=2; *see also* https://www.cnn.com/2023/03/24/tech/tiktok-ban-national-security-hearing/index.html ("TikTok is not unique: the same tool is used by **US tech giants including Facebook-parent Meta and Google** *on a far larger scale*, according to Malwarebytes, a leading cybersecurity firm.") (emphasis added).

[5]  *See* https://www.gov.ca.gov/; *see also* Fiorentino Decl., ¶ 3, Ex. B.
[6]  *See* Fiorentino Decl., ¶ 4, Ex. C.
[7]  *See Id.*, ¶¶ 5-6, Exs. D, E.
[8]  *See Id.*, ¶ 7, Ex. F.
[9]  *See Id.*, ¶ 8, Ex. G.
[10]  *See Id.* at ¶ 9, Ex. H.
[11]  Tauler Smith has a troubling history of pursuing high-volume sham litigation as a means of extracting *in terrorem* settlements.  The firm was recently found **guilty of violating *RICO*** as part of a multi-year scheme targeting primarily immigrant-run and mom-and-pop shops with frivolous demand letters and litigation.  *See* https://www.reuters.com/legal/government/how-legal-brawl-over-male-enhancement-pills-led-rico-verdict-against-this-la-2023-03-24/ (last accessed January 23, 2025); *see also* https://casetext.com/case/in-re-outlaw-labs-lp-litig-19 (court order summarizing that Tauler Smith "sent an estimated **15,000 demand letters**" and this was *after* "Tauler Smith tested an enhancement pill from Sunset Liquor, the pill did not contain the active ingredients subject to the FDA notice, but that Robert Tauler '**did not care**.'") (emphasis added) (last accessed January 23, 2025). Rather than accept accountability and the jury's verdict, Tauler Smith instead sued its bank for allowing *part* of the judgment against it to be collected.  *See, generally, Tauler Smith LLP v. JPMorgan Chase Bank* (C.D. Cal., filed June 13, 2024) Civ. No. 2:24-cv-05013-ODW-AWW.  Unfortunately for CuriosityStream and hundreds of other businesses, what's past is prologue.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                    - 10 -                    DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

1    to recognize you if you visit the Website again."[12]   In other words, Tauler Smith publicly boasts

2    that it is "violating" Section 638.51 of the Penal Code ***exactly*** as it is accusing CuriosityStream in

3    its form Complaint.  See Compl. ¶ 31 (alleging that CuriosityStream "uses a trap and trace process

4    on its Website … because the software is designed to capture the phone number, email, routing,

5    addressing and other signaling information of website visitors.").  It is therefore difficult to imagine

6    a less principled pursuit of other businesses for setup claims under a criminal law – for doing exactly

7    what Tauler Smith is ***admittedly*** doing itself.[13]

8         Does this mean that Tauler Smith and ***every level*** of government in California are also

9    violating Section 638.51 of the Penal Code?  More than that, if it were a violation of Section 638.51

10   for the receiving party to "collect" the "signaling information" associated with a "communication"

11   without a court order – which is exactly Plaintiff's theory here, Compl. ¶ 29 – then tens of millions

12   of Californians violate this law every day by using Caller ID on their phones.  Ultimately, however,

13   Section 638.51 and its regulation of obscure "pen registers" and "trap and trace devices" have

14   nothing to do with how public and private entities operate their websites – the California

15   Legislature[14] did not silently criminalize the Internet.

16        As a threshold issue, however, the initial issue here is whether hundreds of millions of

17   Americans, or millions of website operators like CuriosityStream, can be haled into a California

18   court simply because a California plaintiff ***targets them***.  This, of course, would turn the standards

19   of personal jurisdiction on their head.  At bottom, the Court has no personal jurisdiction over

20   CuriosityStream,  and  never  can  based  on  Plaintiff's  express  dispute  concerning  how

21   CuriosityStream operates its website generally, as multiple Courts of Appeals have recently held in

22   indistinguishable cases.

23

24   ---

     [12]   *See* Fiorentino Decl., ¶ 10, Ex. I.
     [13]   *See* https://www.taulersmith.com/california-invasion-of-privacy-act/ ("To win your CIPA

25   claim, you will need to prove that the conversation was illegally recorded in the first place. In
     some cases, **this will be obvious** because **the business will reveal** that they are monitoring and

26   recording … .") (emphasis added).
     [14]   Not to belabor the point, but the California Legislature also uses comparable analytics

27   software on its official sites, as do the Legislators on their **personal sites**, such as
     https://www.rivasca.com/.  It's reasonable to assume that Legislators do not enact laws that would

28   mandate their immediate arrest.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                    - 11 -

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

## II. STATUTORY FRAMEWORK

At the outset, it must be underscored that California has a first-in-the-nation comprehensive privacy law that gives consumers control over their personal data – the California Consumer Privacy Act ("CCPA"), as amended by the California Privacy Rights Act ("CPRA"). The CCPA purposely addresses how businesses can use consumers' information obtained online, what disclosures are required, and how such disclosures need to be made. Relevant here, Section 7012(c) of the CCPA regulations specifically authorizes website operators to collect personal information by "post[ing] a conspicuous link to the notice on the introductory page of the business's website and on all webpages where personal information is collected." Title 11, Div. 6, Ch. 1 § 7012(c)(1). If website operators like CuriosityStream provide notice of their data collection practices through a linked website privacy policy, they are permitted to collect personal information of individuals visiting their website,[15] subject to an individual's (1) right to know, (2) right to delete, (3) right to **opt out**, and (4) right to non-discrimination.[16]

There is no claim here – nor could there be – that CuriosityStream is not in compliance with any applicable requirements under the CCPA, the law that was enacted to specifically address online privacy issues, expressly including the use of website "**cookies, beacons, pixel tags**, **mobile ad identifiers**, or similar technology" – the exact technology Plaintiff complains about here. Civ. Code § 1798.140 (emphasis added); Compl. ¶ 14. And it "is a cardinal rule of statutory interpretation that specific statutory regulations control over the general statutes." *Steilberg v. Lackner* (1977) 69 Cal. App. 3d 780, 788.[17]

---

[15]  *See* California Privacy Protection Agency, What General Notices Are Required By The CCPA? (ca.gov) ("If the business doesn't give this notice, it is not allowed to collect personal information from the consumer.").

[16]  *See* California Consumer Privacy Act (CCPA) | State of California - Department of Justice - Office of the Attorney General. To put a finer point on it, it would be nonsensical to give consumers the independent rights to know, delete *and* opt out of the exact online data exchanges at issue here, if website operators already were required to obtain *opt-in* consent to use analytics tools on their own websites in the first place.

[17]  Notably, in a thoughtful decision that applied this principle in a directly analogous case, the Massachusetts Supreme Court recently held that its state's comparable "wiretapping" law simply does not apply to website analytics tools. *See Vita v. New England Baptist Hosp.*, 494 Mass. 824, 839, 243 N.E.3d 1185, 1198 (2024) (holding that only person-to-person communications were meant to be covered by such laws, *not* interactions with websites).

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471          - 12 -          DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

As for such general statutes, Plaintiff's claim arises under CIPA, a law originally enacted in 1967 – well before the Internet age – for the express purpose of preventing "eavesdropping upon private communications" and "the invasion of privacy resulting from the continual and increasing use" of "modern listening devices." Penal Code § 630.  In short, the California Legislature wanted to prevent snooping on **private *conversations***, and this is Plaintiff's attempt to put old wine in a new bottle.  Relevant here, while Plaintiff's claim arises under Section 638.51, a 2015 addition to CIPA, it is critical to understand the statutory context of CIPA as a whole to appreciate why Section 638.51 cannot apply to website operators.[18]

First, there is the "interception" prohibition under CIPA Section 631 – which applies to **third-party** "wiretapping" of private communications in transit over a wire.  More specifically, the California Supreme Court has held that Section 631 protects against three types of harms: "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication **in transit** over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court* (1978) 22 Cal.3d 187, 192 (emphasis added).  Critically, given CIPA's express purpose of preventing eavesdropping and as a further common-sense guardrail, Section 631 consistently "has been held to apply only to eavesdropping **by a third party** and ***not to recording*** by a participant to a conversation."  *Warden v. Kahn* (1979) 99 Cal. App. 3d 805, 811; *see also Valenzuela v. Alexander Wang, LLC*, 23STCV12422 (L.A. Superior Ct., Dec. 27, 2023) (finding that website operator is **categorically immune** from liability under Section 631 of CIPA – as "[e]mploying another to record one's conversations is the sort of conduct that would be outlawed by section ***632***," rather than section 631) (emphasis added).[19]

---

[18]    "[W]ell established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect," and separate sections, like Sections 638.51 and 638.52 here, "must be read together and so construed as to give effect, when possible, to all the provisions thereof." *Mejia v. Reed* (2003) 31 Cal. 4th 657, 663.

[19]    *See also Powell v. Union Pac. R. Co*., 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012) (ruling that Section 631 applies **only** to "third party actions and therefore, as a party to the call, he **cannot be liable as a matter of law**"; further ruling by extension that a party to conversation cannot "be liable for aiding or conspiring with a third party to enable that party to listen in on the call.") (emphasis added)

The Court of Appeal in *Rogers v. Ulrich* fully embraced this conclusion as well: "a recording made by a participant **does not intercept** the message **while it is in transit**; the recording rather transcribes the message as it is being received." *Rogers*, (1975) 52 Cal. App. 3d 894, 898 (emphasis added). The key takeaway is this: under decades of binding CIPA precedent, parties to a communication do ***not intercept*** their own messages; they **receive** them.[20] This makes perfect sense because intercepting a communication means "to stop, seize, or interrupt in progress or course **before arrival**." *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). That is why it is conceptually impossible under this plain-English definition for any party to "intercept" that same communication at its destination – here, CuriosityStream's website.

As for recording by a party, Section 632 applies to any person who "intentionally and without the consent of all parties to a **confidential communication**, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Penal Code § 632 (emphasis added). This language has uniformly been construed to prohibit one party to a *confidential* communication from recording that communication without the knowledge or consent of the other party. *Warden*, 99 Cal. App. 3d at 812. *See People v. Nakai,* (2010) 183 Cal. App. 4th 499, 519, (analyzing whether to exclude recorded **sexual** chat transcripts under Section 632, and not Section 631, and holding as a matter of law that "it was not reasonable … to expect that the communications to be confidential because … the communications could have easily been shared or viewed" by chat service provider "or any computer user"); *see also People v. Cho,* No. E049243, 2010 WL 4380113, at *5 (Cal. Ct. App. Nov. 5, 2010) ("lewd or lascivious" online "chat conversations do not qualify as confidential communications for purposes of Section 632" and holding that such conversations are not protected under CIPA).

The "pen register/trap and trace" sections of CIPA were a 2015 addition against this well-settled backdrop. Specifically, the **sole** "purpose of this bill [was] to authorize **state and local law**

---

[20]    This is why no one would ask, "did you intercept that email I sent you?"

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                          - 14 -

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

**enforcement** to use pen register and trap and trace devices under state law, and to permit the issuance of emergency pen registers and trap and trace devices."[21]  According to the bill's author:

> One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all *outgoing* **numbers from a particular telephone line**. In addition, another tool law enforcement uses is called a 'trap and trace device' which **allows them to record what numbers have called a specific telephone line**, i.e. all *incoming* **phone numbers**. Both pen registers and trap and trace devices do not record audio or text messages and cannot be used to obtain real-time location data on a cellular telephone. But these tools are extremely useful for law enforcement in situations such as gang and narcotic investigations.[22]

Put simply, this law was enacted for no other reason than to *facilitate* law enforcement's ability to place such devices on **telephone lines** to intercept the "signaling information" of **telephone calls**.[23]  In fact, the need for the bill arose due a conflict between federal and state law. Federal law authorized "states and local law enforcement officers to use pen registers and trap and trace devices by obtaining a court order first," but it did "not allow them to obtain an emergency order unless there [was] a state statute authorizing and creating a process for states and local law enforcement officers to do so." (*Id*, p. 10.)  At the time, California did not "have a state statute authorizing the use of pen registers or trap and trace devices." (*Id.*) Thus, local and state law enforcement agencies that utilized trap and trace devices on an emergency basis were technically in violation of federal law. (*Id*., pp. 5-6.) Assembly Bill 929 sought to remedy that problem by creating a comprehensive statutory scheme that "explicitly authorize[d] state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations."

But importantly, the Legislature largely copied verbatim the definitions of "pen register" and "trap and trace device" directly from federal law.  *See* 18 U.S.C. § 3127(3)(4).  And just as

---

[21]      *See* Fiorentino Decl., ¶ 11, Ex. J.
[22]      *See* Fiorentino Decl., ¶ 11, Ex. J. Thus, according to the law's author, pen registers obtain information on the outgoing telephone numbers dialed, while trap and trace devices collect the incoming numbers.
[23]      Again, under the undisputed intent of this law applying to telephone calls, every person that uses Caller ID service – which is effectively everyone with phone service today – would need to obtain a court order to "collect" the "signaling information" of the calling party under Plaintiff's theory that this statute applies to parties to the communication.

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

critically, it was also well established at the time the California Legislature copied these definitions that these devices were **strictly related to telephone lines**. *See Smith v. Maryland,* 442 U.S. 735, 736 n. 1 (1979) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *see also People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987) ("A pen register is a mechanical device connected to a telephone number to monitor dialing activity. It registers the phone numbers dialed to make outgoing calls, including the dates and times the receiver is picked up and replaced."); *In re The Application of the United States of America for an Order Authorizing the use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (observing the potentially broad definitions, but holding "it appears from the construction of related sections of the statutes governing trap and trace devices that **they include only devices that are attached to a telephone line**.") ("*Digital Analyzer*").[24]

Given the foregoing, there is unsurprisingly not a single reference in the legislative history of this law having any impact on the parties to a communication, let alone anything about websites or online privacy. In fact, other laws enacted before and after Section 638.51 ***mandate*** the collection of the "signaling information" of website visitors in various circumstances. *See, e.g.,* Cal. Gov't Code § 8231.18(c)(3)(A)(iv) ("A business shall produce an audit trail detailing … [t]he Internet Protocol address of the party performing the action."); *see also* 18 U.S.C. § 2258A(b)(1) (mandating that service providers report information related to suspected child sexual exploitation, including "the electronic mail address, Internet Protocol address, uniform resource locator, … or other identifying information" of the applicable website user). Clearly, it would be absurd to conclude that the Legislature intended for businesses to simultaneously ***violate criminal law*** in order to comply with their other legal obligations.

Given this, it is also not surprising that the regulation of these devices (not) at issue here

---

[24]    It is a well-settled rule of statutory construction that the Legislature "must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment." *Shapiro v. United States*, 335 U.S. 1, 16 (1948). In other words, the Court needs to assume here that the Legislature was aware that these definitions were consistently interpreted to be limited to telephone lines, and did not reach any further, when they enacted this law.

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

builds off the definitions of "wire communication" and "electronic communication" that are **expressly limited** "to the **interceptions** of wire and electronic communications." Penal Code §§ 629.51, 638.50 (emphasis added).  That is, the definitions employed in Sections 538.51-53 relevant here "have the meanings set forth in subdivision (a) of Section 629.51," *id.* § 630.50, which again, "applies to the **interceptions** of wire and electronic communications. It **does not apply** to stored communications or stored content." Penal Code § 629.51(b) (emphasis added); *see also id.* § 629.51(c) ("The act that added this subdivision **is *not intended* to change the law as to stored communications or stored content**.") (emphasis added). And as established above, a party to a communication legally cannot intercept it, but only *receive* it.  Thus, the Legislature's intent that this law does *not* apply to parties to a communication is ***expressly incorporated*** into its foundational definitions.

Similarly reinforcing that this law only applies to *third* parties (and particular ones at that), rather than parties to a communication, Sections 538.51-53 only encompass two distinct entities: **communications service providers and law enforcement**. That's it. Specifically, Section 538.51 – which incorporates the definitions limited to interceptions – provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Penal Code § 638.51(a).  Subsection (b) of 638.51 provides certain exceptions **only for** "[a] provider of electronic or wire communication service" – such as to provide such services or with the consent of the user.  *Id.* at 638.51(b)(1)-(5).

Sections 638.52 and 638.53, in turn, only apply to "a peace officer" and their ability to "make an application to a magistrate for an order … approving the installation and use of a pen register or a trap and trace device."  Notably, any such order issued by a magistrate **must identify** "the person to whom is leased or in whose name is listed **the telephone line** to which the pen register or trap and trace device **is to be attached**."  Penal Code § 638.52(d)(1); *see also id.* § 638.52(d)(3) (the order "shall specify" the "physical location of the **telephone line** to which the pen register or trap and trace is to be attached").

In sum, only communications service providers and law enforcement officers are expressly

1    within the scope of this "interception" statute.  While communications service providers can obtain

2    consent to install or use these signaling interception devices, that is not a defense available to a

3    party to a communication under this statute, such as the millions of Californians that use Caller ID

4    service to "trap" the signaling information of who is calling them.  And only peace officers can

5    apply for a court order to install or use such devices, provided the specific **telephone line** is

6    identified. The statutes at issue here thus do not even contemplate *any* application to a party to any

7    communication, let alone to website operators **comprehensively** regulated by the CCPA.

8    ### III.    PLAINTIFF'S BOILERPLATE ALLEGATIONS

9    Relevant here, Plaintiff Christopher Mitchener is by all appearances a professional plaintiff

10   working with Tauler Smith to allegedly visit websites, do nothing more, and then have identical[25]

11   "Trap and Trace" complaints filed on his behalf.  Unfortunately for both CuriosityStream, the Los

12   Angeles County Superior Court, and numerous other businesses, Plaintiff and Tauler Smith have

13   been filing dozens of complaints on his behalf, while (apparently) falsely claiming he resided in

14   Los Angeles County.  Then when the dispositive motions were to set to be heard, he would dismiss

15   his complaint there, just to refile a largely identical Compliant with this Court, except he now

16   inexplicably alleges that "at all times to relevant to this complaint" he has resided "within the

17   Northern District of California."  Compl. ¶ 4.

18   CuriosityStream, for its part, is a *Delaware*[26] corporation that operates

19   "www.curiositystream.com ("Website), an online streaming platform offering documentary films,

20   shows and series covering science, nature, history and technology.  Compl. ¶ 8.  Plaintiff merely

21   alleges that he "visited Defendant's website after the TikTok Software was installed and within the

---

[25]    "Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing? And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far. This case reached that point, **and then blew past it**." *Licea v. Caraway Home Inc.*, No. 22-CV-1791-JGB-SHKX, 2023 WL 1999496, at *6 (C.D. Cal. Feb. 9, 2023) (emphasis added).  This is how Judge Bernal recently characterized similar cookie-cutter CIPA lawsuits filed against hundreds of companies that simply operate standard websites.

[26]    Plaintiff's latest Complaint continues to incorrectly allege that CuriosityStream is a Maryland corporation.  Defendant is a Delaware corporation with its principal place of business in Maryland.  Ultimately, neither Delaware nor Maryland is California, such that Plaintiff's false allegations are immaterial to CuriosityStream's grounds for dismissal.

limitations period" – and that's it. *Id.* ¶ 9.  CuriosityStream has no alleged presence in California, and nor does Plaintiff allege he interacted with anyone through the Website.  *See* Compl.  There is also no allegation that Plaintiff purchased anything from CuriosityStream, i.e., there is no allegation that Defendant purposefully directed any activity into California **related to** his claim.

Further, there is not a <u>single</u> allegation in the Complaint suggesting that CuriosityStream operates the "TikTok Software" allegedly deployed on its website in a manner that would target California residents in any unique way.  *See* Compl.  Rather, Plaintiff alleges that the TikTok Software that is the sole basis of his claim collects data "***on*** the Website" regarding "an otherwise **anonymous visitor**" and "matches it with existing data TikTok has acquired and accumulated about **hundreds of millions of Americans**." *Id.* ¶ 10 (emphasis added).  In other words, Plaintiff is expressly complaining about the *general* operation of CuriosityStream's *nationally-available* website – which does not in any way target California residents.  Finally, Plaintiff does not allege that he suffered *any* injury from the collection of the "otherwise anonymous" information *his device* disclosed to the CuriosityStream website.

## IV.    <u>STANDARD OF REVIEW</u>

A motion to dismiss under Rule 12(b)(2) is not limited to the pleadings and the plaintiff bears the burden of establishing personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

In resolving a 12(b)(6) motion, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" only if the plaintiff pleads **facts** – **not conclusions** – that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by **mere conclusory statements**, **do not suffice**." *Id* at 678 (emphasis added).

In addition, the Court not only needs to interpret Section 638.51 consistent with the overall statutory framework, *see Mejia v. Reed* (2003) 31 Cal. 4th 657, 663, but also construe any

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                - 19 -                DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

1    ambiguities in favor of CuriosityStream given that Plaintiff seeks to enforce a penal law.  *See*

2    *People v. Avery* (2002) 27 Cal. 4th 49, 58 ("ambiguous penal statutes are construed in favor of

3    defendants . . . [if] two reasonable interpretations of the same provision stand in relative

4    equipoise"); *Warden v. Kahn* (1979) 99 Cal. App. 3d 805, 814, 818, n.3 (as a penal statute,

5    ambiguity in Section 631 should be interpreted narrowly).[27]

6    ## V.    THE COURT LACKS JURISDICTION OVER CURIOSITYSTREAM

7         A California court's assertion of personal jurisdiction over a nonresident defendant

8    comports with the requirements of the due process clause of the Federal Constitution if the

9    defendant has such minimum contacts with the state that the assertion of jurisdiction does not

10   violate traditional notions of fair play and substantial justice. (*Vons Companies, Inc. v. Seabest

11   Foods, Inc.* (1996) 14 Cal.4th 434, 435.)  To establish minimum contacts, either general or specific

12   jurisdiction can be used.  (*Id.* at p. 445.) "General jurisdiction" exists where a defendant's activities

13   in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the

14   exercise of jurisdiction over the defendant in all matters, while "specific jurisdiction arises when a

15   defendant's contacts with the forum give rise **to the claim in question**."  *Helicopteros Nacionales

16   de Colombia S.A. v. Hall* (1984) 466 U.S. 408, 414–416.

17   ### A.    General Jurisdiction Does Not Exist Over CuriosityStream

18        For a corporation, the paradigm forum for the exercise of general jurisdiction is the place in

19   which the corporation is fairly regarded as "at home," meaning (1) its place of *incorporation;* and

20   (2) its *principal place of business*.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), quoting

21   *Goodyear Dunlop Tires Operations, S.A. v. Brown*,  564 U.S. 915, 924 (2011).

22        Here, CuriosityStream is a Delaware corporation with no alleged presence in California.

23   Compl. ¶ 5.  Therefore, CuriosityStream cannot be said to be "at home" in California for purposes

24   of conferring general jurisdiction, as it is not incorporated in or have its principal place of business

25

26   [27]    Principles of statutory interpretation require that acts of a legislative body receive
     **uniform interpretation**, regardless of whether the law is invoked in an administrative, civil, or
27   criminal case. *See Clark v. Martinez*, 543 U.S. 371, 380 (2005); *see also Leocal v. Ashcroft*, 543
     U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter
28   its application in a criminal or noncriminal context, the rule of lenity applies.").

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

in California.  And "only in an 'exceptional case' could [a defendant] be subject to general jurisdiction in California" when its state of incorporation and principal place of business are elsewhere.  (*Electro Scan, Inc. v. Henrich* (E.D. Cal. Mar. 21, 2019) No. 218CV02689JAMEFB, 2019 WL 1299010, \*4 (citing *Ranza v. Nike*, *Inc.* (9th Cir. 2015) 793 F.3d 1059, 1069)).

CuriosityStream therefore is not anywhere close to being "at home" in California, and Plaintiff did not, and cannot, allege facts sufficient to meet the exacting standards for establishing general jurisdiction.

### B.    Specific Jurisdiction Does Not Exist Over CuriosityStream

Given the lack of general jurisdiction over CuriosityStream, Plaintiff must then show that specific jurisdiction exists.  That Plaintiff cannot do because his claim does not arise out of any activity CuriosityStream *purposefully directed into California*.  Indeed, numerous courts have dismissed website operators for lack of personal jurisdiction in "wiretapping" lawsuits filed in California for the same reason – including in response to Tauler Smith's template CIPA complaints. *See Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1171–72 (C.D. Cal. 2024) ("Because the law is clear that a defendant cannot be sued in any forum where its website is visible, ... and because Heiting has not shown that Marriott operated its website in a manner that specifically targeted California, the Court holds that Heiting has failed to establish that Marriott expressly aimed its actions at the forum."); *see also Carroll v. The J.M. Smucker Company*,  No. 3:22-cv-08952-WHA, 2023 WL 4053796, \*5 (N.D. Cal. Jun 15, 2023) (dismissing complaint on personal jurisdictional grounds because out-of-state defendant "ha[d] done no act and ha[d] consummated no transaction, nor ha[d] it performed any act by which it purposefully availed itself of the privilege of conducting activities in California relevant to this action."); *Massie v. Gen. Motors Co.*, 2021 WL 2142728, \*6 (E.D. Cal. May 26, 2021).

In fact, two Courts of Appeals similarly held that it would violate due process for an out-of-state defendant to be haled into court to face "wiretapping" claims because website analytics tools *generally* deployed on a company's website do not *specifically* target any particular state, and therefore specific jurisdiction is lacking.  *See Rosenthal v. Bloomingdales.com, LLC* (1st Cir. 2024)

101 F.4th 90, 93; *Hasson v. FullStory, Inc.*, 114 F.4th 181, 192 (3d Cir. 2024); *accord Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018).  That's exactly this case.

These decisions are fully consistent with Ninth Circuit precedent, which requires a Plaintiff to satisfy the following three-part test:

> (1) The non-resident defendant must **purposefully direct** his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be **one which arises** out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing* 539 F.3d 1011, 1016 (9th Cir. 2008) (emphasis added); *accord Gilmore Bank v. AsiaTrust New Zealand Ltd.* (2014) 223 Cal. App.4th 1558, 1568.  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004) 374 F.3d 797, 802.

The starting point, then, is for Plaintiff to show that CuriosityStream "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Id.*  Where, as here, Plaintiff's claim sounds in tort rather than contract, analysis of purposeful direction, rather than purposeful availment, is appropriate. *Id.*  To show purposeful direction, Plaintiff must plead facts to satisfy the "effects test": CuriosityStream must have "(1) committed an intentional act, (2) **expressly aimed at the forum state**, (3) causing harm that [CuriosityStream] knows is likely to be suffered in the forum state." *Id.* at p. 803 (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (emphasis added); *Calder v. Jones* (1984) 465 U.S. 783.  If Plaintiff can satisfy this test (which he cannot), Plaintiff must then tie his claim to that purposefully directed act to establish jurisdiction.  *Id.*

Preliminarily, Plaintiff's apparent theory of personal jurisdiction is based solely on the conclusory assertion that "Defendant has purposefully directed its activities to the Northern District of California by regularly engaging with individuals in California through its website."  Compl. ¶ 2.  While it is facially unclear what Plaintiff means by "engaging with individuals," presumably

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471    - 22 -    DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

Plaintiff means CuriosityStream offering its streaming service through its website.[28]   However, such a conclusory allegation, even accepted as true, cannot support specific jurisdiction over a non-resident retailer where, as here, the product or service placed into commerce is **not** the basis of Plaintiff's claim.  *See Helicopteros, supra*, 466 U.S. at p. 418 ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action **not related to those purchase transactions**.") (emphasis added).

The reality is that the only "targeting" that occurred was *by Plaintiff* to set up this claim. That is, what Plaintiff is alleging is that he visited an out-of-state company's general website, which he then alleges incorporates "software created by TikTok on its website to identify website visitors."  Compl. ¶ 9.  This is akin to someone *calling you*, your phone collects that person's telephone number, and then *they* try to sue you across the country. In other words, Plaintiff's Complaint has nothing to do with CuriosityStream *targeting California*, let alone Plaintiff, but the general operation of CuriosityStream's *national* website.  Indeed, Plaintiff's own allegations make this abundantly clear: "the TikTok Software collects as much data as it can about an otherwise **anonymous visitor** to the Website and matches it with existing data TikTok has acquired and accumulated about **hundreds of millions of Americans**."  *Id.* ¶ 10 (emphasis added).  Plaintiff is unambiguously complaining about the *general* operation of CuriosityStream's website for every website visitor across the country, rather than anything *targeting* California or its residents.

As previewed above, numerous courts have held in indistinguishable cases that exercising personal jurisdiction over CuriosityStream would violate due process here under indistinguishable circumstances.  For example, in *Massie*, a California federal court held that *General Motors* was not subject to personal jurisdiction in California because "Plaintiffs' claims arise from and relate to

---

[28]    Notably, CuriosityStream offers its streaming service subject to its Terms of Use, which provide in relevant part that subscribers "agree that the laws of the United States and the State of Maryland govern these Terms of Use and any claim or dispute that you may have against us." *See* Section 17, Choice of Law, available at https://curiositystream.com/terms.  Any dispute that cannot be resolved informally is required to be "resolved by a court located in the state of Maryland."  *Id.* Section 18.  Thus, the individuals CuriosityStream in fact "engages with" – its actual customers, and not Plaintiff – are agreeing that their relationship with Defendant is governed exclusively by Maryland law, and not any other state's, including California's.

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

session recording software allegedly installed on GM's **nationally accessible websites**, software that GM licensed and used outside California, which allegedly assisted Decibel's interception of interactions with GM's websites." *Massie, supra*, 2021 WL 2142728, *6 (holding that "GM's operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction.") (emphasis added). Similarly, Judge Alsup held that The J.M. Smucker Company was not subject to personal jurisdiction in California in a suit involving the *general* deployment of the Meta Pixel on its nationally accessible website. *J.M. Smucker Company, supra*, 2023 WL 4053796, *4 (holding that complaint concerning general operation of website could not satisfy purposeful direction, and given underlying theory, no jurisdictional discovery was warranted).

Further, the First Circuit recently became the first federal appellate court to address the exact issue presented here: whether a nationally accessible website's use of analytics software creates specific personal jurisdiction for wiretapping claims in any state where the plaintiff visited the website. The First Circuit concluded that it does not. *Bloomingdales.com, LLC, supra*, 101 F.4th at 97. Rather, it held that Ohio-based Bloomingdales.com did not *intentionally target* its website and its accompanying use of analytics software at users in Massachusetts, given that it was not "intentionally operating its website – and the accompanying" analytics software, in a manner *specifically targeted at Massachusetts* residents. *Id.* The plaintiff therefore failed to establish specific personal jurisdiction over Bloomingdales.com for alleged violations of the Massachusetts Wiretapping Act and Massachusetts Invasion of Privacy Statute. *Id.*

The Third Circuit followed suit last September in another case directly on point, affirming that Papa John's – which operated nearly 100 brick-and-mortar pizzerias in the state – was still not subject to personal jurisdiction in Pennsylvania in connection with a "wiretapping" claim "because Papa Johns did not expressly aim Session Replay Code at Pennsylvania." *Hasson, supra*, 114 F.4th at 188. That's because "a defendant does not expressly target a forum merely by operating a website that is accessible there—even when the plaintiff alleges harm in that forum arising out of his engagement with that website." *Id.* at 190; *accord MA Multimedia, LLC v. Wanat*, 970 F.3d

1201, 1210 (9th Cir. 2020) (affirming no personal jurisdiction over website operator in California because website "lacks a forum-specific focus."); *see also ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316, 318 (9th Cir. 2020) (affirming dismissal for lack of personal jurisdiction based on a "highly interactive" website and product sales unconnected to Plaintiffs' claims). "If [CuriosityStream] can be haled into California merely on the basis of its universally accessible website, then, under [Plaintiff's] proposed rule, it can be haled into every state, and respectively, every online advertiser worldwide can be haled into California." *Matus, supra*, 715 F. App'x at p. 663.

This is why Californian courts have likewise repeatedly dismissed similar CIPA claims against website operators for lack of personal jurisdiction. For example, in *Mikulsky v. Noom*, the Southern District of California dismissed a CIPA claim for lack of specific personal jurisdiction where, among other reasons, Plaintiff's allegations that Noom "knows that many users visit and interact with Noom's website while they are physically present in California…and Defendant knew that its practices would directly result in collection of information from California citizens" "fail[ed] to show conduct directly targeting the forum state" because "Plaintiff fail[ed] to include a single allegation detailing how [Noom's] 'interactive website' is targeted at California." 682 F.Supp. 3d 855, 867–68 (S.D. Cal. 2023).   Like *Noom*, Plaintiff's Complaint contains "no allegations detailing the level of interactivity of [CuriosityStream] website," "no allegations regarding whether [CuriosityStream] use of [the pen register or a trap and trace device] specifically targets California users" and "no allegations showing that [CuriosityStream website] specifically targets Californians." *Id.* at 868. *See also Sacco v. Mouseflow, Inc.*, No. 2:20-cv-02330-TLN-KJN, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022) (finding no "express aiming" necessary for specific personal jurisdiction where an alleged recording of an individual's visit to a nationally available website and collection of their personal data "would have occurred no matter the state Plaintiff was in").[29]

---

[29] *See also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 515–16 (C.D. Cal. 2021) (finding no personal jurisdiction in California over session replay provider in wiretapping lawsuit relating to use of session replay tool on nationally accessible website because the plaintiff "failed to allege facts showing FullStory expressly aimed its conduct toward California").

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

Put simply, operating a nationwide website available to users in California does not constitute express aiming at California, and that is all Plaintiff alleges, or could allege, here related to his claim. Ultimately, there is a reason that there is not a single well-pled allegation that would support the exercise of jurisdiction over CuriosityStream here: because none exists. What Plaintiff is specifically complaining about is the *general* operation of CuriosityStream's website and its alleged use of the TikTok Software. And by Plaintiff's own admission, this is occurring on a *national* level, without any purposeful direction toward California. Compl. ¶ 10. Plaintiff's template Complaint is therefore ultimately self-defeating, as it expressly shows that CuriosityStream does *not* aim any of its alleged conduct at issue at California – such that it is legally impossible that Plaintiff's claims can be deemed to "arise[] out of or relate[] to the defendant's forum-related activities." *Schwarzenegger, supra*, 374 F.3d at p. 802. "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco County* (2017) 137 S. Ct. 1773, 1781. Accordingly, CuriosityStream asks the Court to dismiss this action for lack of personal jurisdiction, with prejudice.

## VI.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST CURIOSITYSTREAM

As previewed above, the foundational definitions, legislative intent, and overall statutory framework make it legally impossible that a website operator can be liable under Section 638.51. Indeed, to put the absurdity of Plaintiff's theory into perspective, under binding appellate decisions interpreting CIPA Section 632, a party to a communication can *disclose* the **actual content** of a communication exchanged over the Internet ***without any consent***. In fact, this is true even when one party to a conversation expects it to remain private, such as in *Nakai* and *Cho* above, where the parties recorded were engaged in *sexual conversations* with individuals who were posing as 12-year-old girls to catch pedophiles. *See, e.g., Nakai*, 183 Cal. App. 4th at 518-19.[30] But under

---

[30]    *See also In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (holding there is no "objectively reasonable expectation that [plaintiffs'] email communications were 'confidential' under the terms of section 632."); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052 (N.D. Cal. 2018) (rejecting claim that "internet-based communications can be considered 'confidential' under CIPA").

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                      - 26 -

DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

Plaintiff's theory, these "predator catchers" couldn't even **collect** the otherwise anonymous "signaling information," such as a phone number, email or IP address, associated with the underlying communication, the *content* of which they were, again, free to broadcast to the world.

This bears repeating: CIPA does *not* restrict a party from freely disclosing the content of someone's email that itself could easily identify the person: "My name is John Smith, my telephone number is 555-5555, and I live at 123 Example Street." But Plaintiff's theory would require the Court to conclude that merely collecting the "otherwise anonymous" "signaling information" – such as an IP address like the Court's 63.241.41.219[31] – would be a criminal violation of the **same Act**. Any law that would permit a party to freely *disclose* the substance of a message that itself could identify the sender directly, but you would face **jail time** for merely *collecting anonymous* signaling information, wouldn't survive a rational basis review, let alone more restrictive scrutiny.[32] To be sure, the Court does not need to address these constitutional issues given the other fatal infirmities to Plaintiff's claims, as detailed below.[33]

### A.    Plaintiff Has Not Alleged Any Injury-In-Fact And Lacks Standing.

Plaintiff's Complaint should be dismissed on the threshold ground that he never alleges *any* concrete injury stemming from his alleged visit to the website, which is a both statutory requirement for any claim under CIPA, as well as a jurisdictional requirement under Article III. *See* Cal. Penal Code § 637.2(a) ("Any person who has been **injured** by a violation of this chapter may bring an action against the person who committed the violation") (emphasis added).

In fact, in nearly identical "wiretapping" cases, both the Ninth and Eighth Circuits independently ruled recently that allegations that a website collects and shares information regarding an individual's visit fails to establish any "injury in fact that is concrete, particularized,

---

[31]    Another absurdity of these claims is that "signaling information" is being collected by *both* the website operator *and* the website visitor – that's how Internet Protocol works and it's a two-way street. Thus, Plaintiff would also be in violation of his own view of Section 638.51.

[32]    Under Ninth Circuit case law, the recording of speech itself qualifies as speech entitled to the protection of the First Amendment. *See Animal Legal Def. Fund. v. Wasden*, 878 F.3d 1184, 1203–04 (9th Cir. 2018).

[33]    *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988) (there is a "prudential concern that constitutional issues not be needlessly confronted").

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                    - 27 -                    DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

and actual or imminent." *See Daghaly v. Blommingdales.com, LLC*, 2024 WL 5134350, *1 (9th Cir. Dec. 17, 2024); *Jones v. Bloomingdales.com, LLC*, No. 23-3304, 2024 WL 5205528, at *4 (8th Cir. Dec. 24, 2024) (affirming dismissal of website-analytics invasion of privacy claims because plaintiff "has not plausibly alleged that she suffered a concrete injury, and so she lacks standing to bring these suits. We do so not because we think she experienced only a slight invasion of her privacy, ... but because her allegations do not plausibly suggest that she suffered **any such invasion at all**.") (emphasis added).  Indeed, lack of injury was precisely one of the grounds for dismissal recently adopted in a cookie-cutter "trap and trace" case filed by Plaintiff's counsel.  *See Hughes v. Vivint, Inc*., 2024 WL 5179916 (C.D. Cal. 2024) (holding identical complaint lacks any well-pled allegations of injury, and "[e]ven if Plaintiff was more specific in alleging what information of hers was collected by the TikTok Software, her arguments regarding the harm associated with her invasion of privacy would still be flawed."); *see also Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal.Super. July 09, 2024) ("Plaintiff fails to allege a concrete injury-in-fact.").  Except for the caption, this case is no different.

In short, "[s]tanding is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff." *Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal.App.5th 802, 809 (2016). Here, merely visiting a public website can hardly cause any concrete injury from its collection of admittedly *anonymous* data.  c*f. Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1228 (N.D. Cal. 2022) (no injury, and thus no standing, even where data breach involved *personal information*). Ultimately, Plaintiff never even attempts to allege any injury in his boilerplate Complaint, and that is sufficient by itself to dismiss this case because he cannot make out a *prima facie* case for the Court to assert jurisdiction over it.  *See Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025) (dismissing trap-and-trace complaint with prejudice because lack of any harm associated with collection of anonymous metadata "cannot be cured with an amendment.").

///

///

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                                              - 28 -                    DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

**B.    The Trap and Trace Law Expressly Only Covers Communications In Transit And Third-Party Interception.**

As established above, the "wire communication[s]" and "electronic communication[s]" ostensibly encompassed by CIPA Sections 638.50-53 "have the meanings set forth in subdivision (a) of Section 629.51." Penal Code § 638.50.  Section 629.51, in turn, expressly limits these definitions "to **the interceptions** of wire and electronic communications. It does not apply to stored communications or stored content." *Id.* § 629.51(b) (emphasis added).  In fact, Section 629 as a whole is exclusively related to *law enforcement **interception** of the **content*** of communications, subject to court approval, while Sections 638.50-53 address law enforcement ***interception*** of the signaling information, "but not the contents of a communication." *Id.* § 630.50(b),(c).  In other words, the only way to read these statutes consistently is that Sections 638.50-53 are expressly meant to build off of Chapter 629 to fill in the limited gap of law enforcement's prior lack of a statutory mechanism to obtain the *telephone numbers* relevant to a criminal investigation, rather than the *content* of a criminal suspect's telephone calls.

This interpretation is further compelled by the fact that the *only* entities encompassed by these provisions of CIPA are **non-parties**: the communications service providers and peace officers who would be working together to install these devices on target telephone lines.  Again, consent is **only** a defense for the *communication service provider*, not a party to the communication under this statute.  Penal Code. § 638.51(b)(5).  Put differently, parties to a communication don't have ***any express defense*** to the use of pen registers or trap and trace devices.  So either the California Legislature silently criminalized the practice of tens of millions of Californians that use Caller ID service and the millions of websites that obtain "signaling information" to operate, or this law only applies to interceptions – **which is exactly what Section 629.51(b) states**.  In short, this law has no application to parties to a communication.

Independently, while Section 638.51 states that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53," the only persons who *can* get a court order are "peace officers."  No one else.  *See* Cal.

Penal Code. §§ 638.52-53.   Thus, these provisions should be read in harmony: the "persons" referred to in Section 638.51 are those persons who can "first obtain[] a court order pursuant to Section 638.52 or 638.53" – which again, are **only peace officers**.[34]  Put another way, the scope of persons subject to this law is qualified by their ability to obtain a court order.  And this is the only interpretation that comports with the legislative intent and history behind this law, which as detailed above, was enacted *solely* to *authorize* law enforcement to use these devices.[35]

Ultimately, it is clear from these incorporated definitions expressly limiting their application to law enforcement **interception** that this law cannot apply to a party like CuriosityStream on one end of a purported "communication."  Indeed, a "trap and trace device" is defined as "a device or process that **captures** … the originating number or other dialing" information.   Cal. Penal Code § 638.50(c) (emphasis added).   And the primary definition of "capture" is to "take by force or stratagem; take prisoner; seize: **The police** *captured the burglar*."[36] Simply put, the Legislature adopted language that is plainly synonymous with third-party interception.  It chose "capture," *not* "collect" or "receive."   And it is well-settled through plain English and 50 years of CIPA precedent that a party to a communication legally cannot "intercept" it.  *See*, *e.g.*, *Rogers*, 52 Cal. App. 3d at 898 ("a recording made by a participant **does not intercept** the message **while it is in transit**").

Put differently, the (non-existent) communication Plaintiff had on CuriosityStream's website reached CuriosityStream – there is no dispute about that.   The "offending code" is admittedly "installed **on its** Website."   Compl. ¶ 9. (emphasis added).   Interception, however, cannot occur unless a *third party* somehow "halt(s) the transmission of the messages to their intended recipients."   *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938, 952 (N.D. Cal.

---

[34]    *See Ramos v. Garcia*,  248 Cal. App. 4th 778, 785 (2016) ("A statute should not be read in isolation, 'but construed in context and 'with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.'") (citing *Compulink Management Center, Inc. v. St. Paul Fire and Marine Ins. Co.*, 169 Cal.App.4th 289, 296 (2008)).

[35]    *See Hale v. S. California IPA Med. Grp., Inc.*, 86 Cal. App. 4th 919, 924 ("language that appears unambiguous on its face may be shown to have a latent ambiguity; if so, a court may turn to customary rules of statutory construction or legislative history for guidance.") (2001).  Further, because this is a penal law, any ambiguity should be interpreted in favor of CuriosityStream here.

[36]    *See* https://www.dictionary.com/browse/capture (emphasis added).

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                                    - 30 -                    DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

2014).  Conversely, "once an [electronic communication] has been received by the destination server, **a communication becomes 'stored'** and contemporaneous interception is no longer possible.").  *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *4 (N.D. Cal. Oct. 13, 2016) (emphasis added).  Indeed, in a directly analogous case, the Third Circuit held that website operators do not violate either the Federal Wiretap Act *or* **CIPA** through their use of analytics cookies, precisely because "the California Act does not apply when the alleged interceptor was a party to the communications." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 276 (3d Cir. 2016).  At bottom, as the party operating its website, CuriosityStream could never "intercept" any communications with its own website as a matter of law.  Because amendment would be futile, Plaintiff's claim should be dismissed with prejudice on this ground alone.

### C.    Pen Registers and Trap and Trace Devices Are Limited To Telephones.

Plaintiff's Complaint should be dismissed with prejudice on the independent ground that there is no support in Sections 638.50-54, when read as a whole, that this law applies beyond telephonic communications – both voice (wire communication) and text (electronic communication).  Indeed, that such devices are limited to equipment that can be attached to telephone lines – and only telephone lines – was the consistent interpretation of the courts when the Legislature adopted these same definitions from federal law.  *See, e.g., Digital Analyzer*, 85 F. Supp. at 200.  And under Supreme Court precedent, the Legislature "must be considered to have adopted … th[is] construction … and made it a part of the enactment." *Shapiro,* 335 U.S. at 16.

Moreover, this is the only reasonable interpretation when CIPA's pen register provisions are read as a whole.  As established above, the only way a court order for the use or installation of such devices can be issued is if the "peace officer" specifically **identifies** "the person to whom is leased or in whose name is listed **the telephone line** to which the pen register or trap and trace device **is to be attached**."  Penal Code § 638.52(d)(1); *see also id.* § 638.52(d)(3) (the order "**shall specify**" the "physical location of the **telephone line** to which the pen register or trap and trace is to be attached"); *see also id.* § 638.54(b)(1) (only contemplating the "person owning or leasing the line to which the pen register or trap and trace device is attached").

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                         - 31 -                DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

1    In other words, if there is no telephone line being targeted, no court order can be issued to

2    use these devices.  And the *entire* point of this law was to "authorize[] state and local law

3    enforcement to use pen register and trap and trace devices under state law," subject to court

4    approval and oversight.[37]  It would be absurd for the Legislature – itself using the same technology

5    on its websites – to intend that this law should also be applied to websites and the Internet, but then

6    draft the statutes governing the court orders necessary to use these devices in a way that would

7    make this result ***impossible***.  Conversely, if the Legislature had intended this law to apply to the

8    website operators, thus impacting a huge swath of economic activity, with the added risk of

9    imprisonment, one would expect that it would reference the Internet at least *one time* in either the

10   statutory text or legislative history.  But the Legislature didn't do so.  **Not once**.  Instead, as

11   established above, the Legislature was expressly operating with the understanding and intent that

12   pen registers obtain information on the ***outgoing*** **telephone numbers** called or texted, while trap

13   and trace devices collect the ***incoming*** **numbers** for calls or texts.  That's it.

14   Thus, when these statutes are read together and as a whole, which is how the Court should

15   read them, it is clear that Sections 638.50-54 are strictly limited to telephonic communications (in

16   transit), and have no application to the Internet or websites.  In fact, Judge Pfahler recently

17   dismissed another boilerplate trap-and-trace complaint, "strongly disput[ing]" that website

18   operators could be in violation of this law every time a visitor voluntarily visited their websites.[38]

19   *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal.Super. Mar.

20   13, 2024) ("the court also finds public policy strongly disputes Plaintiff's potential interpretation

21   of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff,

22   thereby providing an IP address for purposes of connecting the website, as a violator.").  Likewise,

23   Judge Murillo also recently held that "'pen register' and 'tra[p] and trace devices' refer to devices

---

[37]    *See* Fiorentino Decl., ¶ 11, Ex. J.

[38]    Suffice it to say that the Internet would literally not work unless IP addresses and other "signaling information" are exchanged automatically between an individual visitor and the destination website.  It is therefore not hyperbole to state that Plaintiff's interpretation of this law would criminalize the Internet, because, again, the only entities who have defenses are communications service providers, and no other entity – including website operators and consumers.

or process that are used to record or decode dialing, routing, addressing or signaling information **from telephone numbers, and not internet communications such as websites**." *Sanchez v. Cars.com Inc.*, Case No. 24STCV13201 at 4 (Cal.Super. Jan. 27, 2025).

The Court should similarly hold here that Section 638.51 does not apply to website operators, and dismiss this case with prejudice.

### D.      Allowing Plaintiff's Complaint To Proceed Would Create An Untenable Conflict With The CCPA.

As also established above, the California Consumer Privacy Act *comprehensively* regulates the data collection and sharing practices Plaintiff complains about in the Complaint. Indeed, "Personal information" covered by the CCPA is defined to include "**Internet or other electronic network activity information** … and **information regarding a consumer's interaction with an internet website application**," Civ. Code § 1798.140, or *exactly* the information Plaintiff is complaining about here.

And as the California Privacy Protection Agency explains, "[b]usinesses can collect information about you in several ways. … [A] business may use cookies or web beacons to record the browser you used to visit the business, … or your IP address. The business collects information about the actions you take online, including via smart devices."[39] Further, as the Attorney General also makes clear, to do so, businesses need only provide notice, typically through a privacy policy, "at the point businesses collect your personal of the types of information they are collecting and what they may do with that information."[40] Finally, consumers have specific rights with respect to their data, including the right to delete their data and the right to *opt out* of its collection.[41] Laws, particularly penal laws like CIPA, must give ordinary people fair notice of what conduct is

---

[39]     *See* https://privacy.ca.gov/protect-your-personal-information/what-is-personal-information/#:~:text=Fortunately%2C%20California%20law%20gives%20us,your%20household%2C%20directly%20or%20indirectly.

[40]     *See* https://oag.ca.gov/privacy/ccpa#:~:text=3.,and%20certain%20types%20of%20information. (last accessed January 24, 2025).

[41]     *See* https://oag.ca.gov/privacy/ccpa#sectionb. (last accessed January 24, 2025).

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                - 33 -                DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS

punishable. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).[42]  Laws that are too vague are unenforceable because they fail to establish standards for the public that are sufficient to guard against arbitrary enforcement. *See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).  And arbitrary enforcement would be the exact result here if the Court allowed this claim to proceed – given that every website collects IP addresses and other metadata, and more than that, every level of the California government are verifiably using the same analytics tools on their respective websites, including the Court's.  Of course, as established above, these data collection practices are permissible under the CCPA, which is the actual law that occupies this area, and not the inapposite Section 638.51 that should have no application here.

## VII.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice.  As detailed above, the Court lacks jurisdiction over CuriosityStream as they relate to Plaintiff's claim.  Independently, Plaintiff could not have possibly suffered any concrete injury by merely visiting the CuriosityStream website, Section 638.51 cannot apply to website operators as a matter of law, and any further amendment would therefore be futile.

Respectfully submitted,

Dated: March 12, 2025                              **ARENTFOX SCHIFF LLP**

By:/s/ Lynn R. Fiorentino
    Lynn R. Fiorentino
    Susanne Boniadi
    Attorneys for Defendant
    CuriosityStream Inc.

---

[42]    *See also Beckles v. U.S.*, 580 U.S. 256, 262 (penal laws that "encourage arbitrary and discriminatory enforcement" are unconstitutional).

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 5:25-cv-01471                    - 34 -                    DEFENDANT CURIOSITYSTREAM INC.'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS