Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Christopher Mitchener*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CHRISTOPHER MITCHENER, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

CURIOSITYSTREAM INC., a Delaware corporation; and DOES 1 through 25, inclusive,

Defendants.

Case No.: 5:25-cv-01471-NW

**PLAINTIFF CHRISTOPHER MITCHENER'S OPPOSITION TO DEFENDANT CURIOSITYSTREAM INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing
Date: August 20, 2025
Time: 9:00 am
Courtroom: 3

**TABLE OF CONTENTS**

**I. INTRODUCTION ... 1**

**II. RELEVANT FACTUAL BACKGROUND ... 3**

**III. LEGAL STANDARD ... 4**

*A. Legal Standard for A Motion to Dismiss Under Rule 12(b)(2)... 4*

*B. Legal Standard for A Motion to Dismiss Under Rule 12(b)(6)... 5*

**IV. ARGUMENT ... 6**

*A. Plaintiff Has Article III Standing And Statutory Standing Under CIPA... 6*

1. Defendant Violated Plaintiff's Right Of Privacy – A Constitutionally Recognized Injury. ... 6

*B. The Court Has Specific Personal Jurisdiction Over CuriousityStream ... 10*

1. The "Minimum Contacts" and Calder/Effects Tests ... 11
2. Briskin Dictates the Personal Jurisdiction Analysis ... 12
   a. Briskin v. Shopify ... 12
   b. The Facts Here Mirror Those in Briskin ... 14
3. *Conohan v. Rad Power Bikes* Lends Further Support to the Exercise of Personal Jurisdiction over CuriosityStream ... 16
4. Each of CuriosityStream's Arguments Against Personal Jurisdiction Rely Upon Principles Explicitly Rejected in *Briskin* ... 17

*C. Plaintiff States a Claim That Defendant Violated CIPA... 18*

1. CIPA's Prohibition On Trap And Trace Devices Applies To The TikTok Software and Internet Communications ... 18
2. The Internet isn't Going to Break ... 19
3. Defendant's Additional Statutory Arguments Lack Legal Basis ... 21
   a. The Trap And Trace Law's Authorization For Court Orders ... 21
   b. The California Consumer Privacy Act ("CCPA") Does Not Conflict With CIPA... 22
   c. Defendant Incorrectly Confuses Different CIPA Provisions ... 23

**V. CONCLUSION ... 23**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 9

*Calder v. Jones*,
465 U.S. 783 (1985) .......... 12

*Caltex Plastics, Inc. v. Lockheed Martin Corp*,
824 F.3d 1156 (9th Cir. 2016) .......... 5

*Cantu v. Tractor Supply Co.*,
2024 WL 1601257 (C.D. Cal. Mar. 21, 2024) .......... 9

*Carroll v. The J.M. Smucker Company*,
2023 WL 4053796 (N.D. Cal. Jun15, 2023) .......... 17

*Conley v. Gibson*,
355 U.S. 41 (1957) .......... 5

*Conohan v. Gen Digital Inc.*,
2025 WL 864655 (C.D. Cal. Feb. 19, 2025) .......... 17

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 10

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) .......... 12

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*,
23 F.4th 1195 (9th Cir. 2022) .......... 5

*Fiore v. Walden*,
688 F.3d 558 (9th Cir. 2012) .......... 5

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 13, 14

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .......... 9

*Freestream*,
905 F.3d .......... 11

*Greenley*,
684 F. Supp. 3d .......... 19

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) .......... 17

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163 (C.D. Cal. 2024) .......... 17

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 6

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3rd Cir. 2019) .......... 8
*Jarman v. HCR ManorCare, Inc.*,
10 Cal.5th 375 (2020) .......... 19
*Keskinen v. Lush Handmade Cosms. LLC*,
2025 WL 851074 (C.D. Cal. Mar. 11, 2025) .......... 17
*Kis v. Cognism Inc.*,
2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) .......... 9
*Lesh*,
2025 WL 563358 .......... 10, 11, 12, 13
*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F. 4th 852 (9th Cir. 1977) .......... 5
*Lopez v. Sony Elecs., Inc.*,
5 Cal. 5th 627 (2018) .......... 22
*Lungren v. Deukmejian*,
45 Cal. 3d 727 (1988) .......... 19
*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) .......... 18
*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018) .......... 17, 18
*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 1, 10, 19
*Moody v. C2 Educ. Sys. Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) .......... 1, 2, 6
*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) .......... 6
*People of State of Cal. v. F.C.C.*,
75 F.3d 1350 (9th Cir. 1996) .......... 2
*Rodriguez*,
2025 WL 65409 .......... 2
*Rosenthal v. Bloomingdales.com, LLC*,
(1st Cir. 2024) 101 F.4th 90 .......... 17
*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 14
*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .......... 1, 10, 19
*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 7
*United States v. VanDyck*,
776 F. App'x 495 (9th Cir. 2019) .......... 7
*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) .......... 5
*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 9

Statutes

Cal. Civ. Code § 1798.175 .......... 22

Cal. Penal Code § 631(a) .......... 10, 11
Cal. Penal Code § 638.50(c) .......... 18, 19, 21
Cal. Penal Code § 638.51 .......... 1, 2, 18

Rules

Fed. R. Civ. P. 12(d) .......... 2
Federal Rule of Civil Procedure 8(a)(2) .......... 5
Rule 12(b)(2) .......... 4, 5, 16, 17
Rule 12(b)(6) .......... 5

Other Authorities

2025 U.S. App. LEXIS 9410 *, at *13 .......... 12
*Briskin v. Shopify Inc.*, No. 22-15815,
2025 U.S. App. LEXIS 9410 * (9th Cir. Apr. 21, 2025) .......... 10
*Briskin*,
2025 U.S. App. LEXIS 9410 *, at *34 .......... 14
*Briskin*,
2025 U.S. App. LEXIS 9410 *, at *37-38 .......... 17
*Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC,
2025 U.S. Dist. LEXIS 72865, at *12 (C.D. Cal. Apr. 3, 2025) .......... 16
*First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR,
2025 U.S. Dist. LEXIS 27438, at *2 n.1 (C.D. Cal. Feb. 14, 2025) .......... 5
*Rad Power Bikes*, No. CV 25-0106 PVC,
2025 U.S. Dist. LEXIS 72865, at *11 (C.D. Cal. Apr. 3, 2025) .......... 23
Shopify code embedded on their websites. *Briskin*,
2025 U.S. App. LEXIS 9410 *, at *16 .......... 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant CuriosityStream, Inc., seeks dismissal of Plaintiff's claim that it worked with TikTok to install software ("TikTok Software") that invaded the privacy of otherwise anonymous website visitors like Plaintiff in a manner prohibited by the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51, which defines and prohibits such Trap and Trace devices. Defendant now argues that would be fundamentally unfair and violate due process to hold Defendant accountable in a California court and that Section 638.51 is strictly limited to telephone lines. Defendant is wrong on both counts. There is nothing remotely unfair about holding it accountable in California courts for violating the privacy of people in California when Defendant obtained the TikTok Software from a California-headquartered company, then used the TikTok Software to send electronic instructions into California to devices that accessed its Website, and then finally, violation of California law, extracted data from those devices in California and sent it back to the California-headquartered company so it could be de-anonymized. In addition, virtually every court that has examined Defendant's statutory arguments have concluded they lack merit and that Section 638.51's prohibition on trap and trace ("Trap and Trace") devices applies to internet communications.

Defendant collects data on unsuspecting visitors to its website using sophisticated technology so that it can identify and track Californians with the assistance of TikTok. Defendant, like other defendants before it, seek the Court's assistance to bail them out of their privacy collection practices that are illegal in this state. *E.g.*, *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367, at *4 (C.D. Cal. July 25, 2024) (concluding that defendant could be held liable for violating California's prohibition on trap and trace devices over the internet) ("*C2*"); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024) (same); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same).

However, virtually every court who has assessed the TikTok Software at the pleading stage has come to the same conclusion – that the TikTok Software fits within the definition of an illegal "Trap and Trace" device under California Penal Code Section 638.51 because of the way it is designed to collect information from Californians without their consent. As Judge Klausner explained in *C2*, "Defendant argues that § 638.52 indicates that a pen register or trap and trace device must be a physical device attached to a telephone line. . . . The Court disagrees." 2024 WL 3561367, at *2; *see also Rodriguez v. Autotrader.com*, Inc., 2:24-cv-08735-RGK-JC, ECF No. 25 (C.D. Cal. January 8, 2024) (same).

Defendant instead chooses to make multiple incorrect factual representations about Plaintiff's allegations or engage in wild and unsupported speculation about the technology involved. Defendant for example goes on unrelated tangents about what a ruling for Plaintiff would mean for **caller ID systems**. Mot. at 4, 9 n.23, 10, 22. But nothing in Plaintiff's FAC involves caller ID and courts have concluded that caller ID systems are not analogous to Trap and Trace devices on websites. *Rodriguez*, No. 2:24-CV-08735-RGK-JC, 2025 WL 65409, at *6 ("Unlike a caller ID system, which is installed on the call recipient's device, the Website installs the tracking software on the visitor's browser. The software then remains on the visitor's browser unless the visitor decides to delete it."). Defendant's argument relies on a myriad of facts absent from the complaint which can only be addressed on summary judgment, Fed. R. Civ. P. 12(d), and fails to show any actual absurdity, because there would be nothing absurd about a law banning caller ID services, merely surprising. And Defendant made no attempt to even begin the complex task of analyzing any of the numerous other regulations and statutes at both the state and federal level involved in caller ID systems, let alone cellular technology. *E.g.*, *People of State of Cal. v. F.C.C.*, 75 F.3d 1350, 1358 (9th Cir. 1996) (upholding FCC's order preempting California Public Utility Commission's rules for caller ID services).

Defendant ultimately argues that the federal courts cannot hold Defendant accountable for its conduct because the injuries it caused by invading Plaintiff's privacy with an illegal trap and trace device

are simply not cognizable under Article III. Similarly, the State of California cannot hold Defendant accountable in its courts for violating California law because Defendant was "in another state" when it used the internet to intentionally and knowingly violate invade the privacy of Plaintiff and potentially millions of other people in California. Fortunately, Defendant is not above the law and privacy-based injuries like those alleged in the FAC have long been cognizable under Article III.

## II. RELEVANT FACTUAL BACKGROUND

CuriosityStream is an online platform that operates as a factual content streaming service and media company through its website www.curiositystream.com (the "Website"), providing video and audio programming services. FAC ¶ 9. To assist in targeting of California residents, Defendant partnered with TikTok to embed advertising related software created by TikTok (the "TikTok Software") into the Website. FAC ¶¶ 10, 14; Decl. of J. Evan Shapiro in Support of Plaintiff's Oppo. to Mot. to Dismiss ("Shapiro Decl.") ¶¶ 2–5; Shapiro Decl., Ex. H (TikTok Advertising Services "Terms of Service").

Plaintiff visited the Website on September 16, 2024, while in California. FAC ¶¶ 5, 12. Plaintiff did not take any action to consent to being identified by the Website or to have any information on the device he used to visit the Website, or the browser he used, be transmitted to TikTok for identification or marketing purposes. FAC ¶¶ 14, 21-22.

As deployed on the Website, the TikTok Software serves as a de-anonymization process that identifies visitors for the marketing and surveillance purposes (and benefit) of Defendant and TikTok. FAC ¶¶ 13-17, 19-20. With the TikTok Software, the Website "gather[s] device and browser information, geographic information, referral tracking, and URL tracking [from a Website visitor] by running code or 'scripts.'" FAC ¶ 14; Shapiro Decl., Ex. B (TikTok webpage, "About TikTok Pixel") ("The [TikTok Software] collects information available via standard web browsers, like Chrome" including the "User Agent," which is "used to determine the device make, model, operating system and browser information" of a visitor).

This data extraction happens as a visitor, such as Plaintiff, is landing on the Website's homepage – before he has the opportunity to consent to the Website's trap and trace device. FAC ¶¶ 14-17. The data from a visitor's browser on his or her device is transmitted by the TikTok Software on the Website to TikTok for the purpose of matching it with existing data TikTok has about the visitor. FAC ¶¶ 15-17; Shapiro Decl., Ex. D (TikTok webpage) ("Advanced Matching is a feature that helps you match customer information such as email and phone number along with actions people take on your website."). TikTok can compare the visitor data sent from the Website with a massive database concerning hundreds of millions of Americans, for the purpose of "fingerprinting" or identifying a visitor. FAC ¶ 14; Shapiro Decl., Ex. D (TikTok webpage "About Advanced Matching"). The "Auto Advanced Matching" feature of the TikTok Software allows Defendant to send information typed by Website visitors into fields on the pages of the Website. Shapiro Decl., Ex. F (TikTok webpage, "How to Set up Auto Advanced Matching") ("[w]hen a visitor lands on your website and inputs customer information during registration, sign-in, contact or checkout on a website where you installed [the TikTok Software], Automatic Advanced Matching will capture information from those fields…"); Ex. D (TikTok webpage "About Advanced Matching"); Ex. E (TikTok webpage "Best Practices for Advanced Matching"). This is done so visitors, like Plaintiff, can be targeted for marketing and advertisement in the future with greater certainty. FAC ¶ 15; Shapiro Decl., Exs. A-B, D, F (one purpose of the TikTok Software's collection of website users' private data is to improve a website operator's targeted advertisement of customers).

TikTok has its US headquarters in Culver City, California. See FAC ¶ 10; Shapiro Decl., Ex. G (TikTok press release, "Growing our presence in Los Angeles"). Defendant contracts with TikTok to obtain its marketing, advertising, and commercial surveillance services. FAC ¶ 11. The contract provides that California law governs it, and any disputes under it. See Shapiro Decl., Ex. H, at 21.

## III. LEGAL STANDARD

### A. <u>Legal Standard for A Motion to Dismiss Under Rule 12(b)(2)</u>

"On a motion to dismiss for lack of personal jurisdiction, the court 'take[s] as true all uncontroverted allegations in the complaint.'" *First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438, at *2 n.1 (C.D. Cal. Feb. 14, 2025) (quoting *LNS Enters. LLC v. Cont'l Motors, Inc*., 22 F. 4th 852, 858 (9th Cir. 1977)). Where a defendant's Rule 12(b)(2) motion to dismiss "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (citation and internal quotation marks omitted). This showing may include reasonable inferences made from a complaint's material factual allegations in the plaintiff's favor. *See, e.g., Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) ("We will draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility.").

**B. Legal Standard for A Motion to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV. ARGUMENT

### A. Plaintiff Has Article III Standing And Statutory Standing Under CIPA

#### 1. Defendant Violated Plaintiff's Right Of Privacy – A Constitutionally Recognized Injury.

Plaintiff suffered a constitutionally cognizable injury when Defendant violated his right to privacy. After reviewing allegations substantially similar to those in the FAC, *C2 Educational Systems* explained:

> there is no credible dispute that Plaintiff has alleged an injury necessary for both § 637.2 and standing. Plaintiff alleges: (1) Defendant operates its TikTok Software on its Website; (2) the TikTok Software collects data from every visitor of the Website; and (3) Plaintiff visited the Website after the TikTok Software was installed. These allegations demonstrate that Defendant, through the use of the TikTok Software, collected Plaintiff's information, thereby constituting an invasion of privacy. And invasions of privacy are actionable injuries.

2024 WL 3561367, at *2-*6 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*")).

Indeed, violations of someone's right to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or her person.'" *In re Facebook*, 956 F.3d at 598-99. There, Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." *Id.* at 599. The Ninth Circuit concluded that such an "unauthorized exploration" of someone's private life and information behind their back constitutes a cognizable Article III injury. *Id.* at 599.

#### 2. Defendant's Article III Standing Arguments Ignore The Allegations In The FAC

The allegations of the FAC more than adequately describe the relevant facts and how Defendant violated Plaintiff's privacy in a constitutionally cognizable way. The Motion spends considerable space

arguing that Plaintiff lacks Article III standing because "there is zero legitimate expectation of privacy with the exact devices and signaling information" and "merely visiting a public website can hardly cause any concrete injury from its collection of admittedly *anonymous* data." Mot. at 28 (emphasis in original). Defendant's arguments badly misstate what Article III requires to establish standing in privacy cases under CIPA, the factual allegations in the FAC, as well as the nature of the privacy violation claim it properly alleges.[1]

Addressing the legal problems with Defendant's Article III standing argument first, Defendant entirely misstates the two Ninth Circuit cases it cites for the incorrect proposition that Article III standing requires a subjective expectation of privacy because Defendant apparently confused Article III of the Constitution with the Fourth Amendment. Defendant cites to *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008), and *United States v. VanDyck*, 776 F. App'x 495, 496 (9th Cir. 2019), to argue that "Plaintiff cannot have suffered any injury here as a matter of law when there can be no legitimate expectation of privacy in the metadata associated with visiting a commercial website," Mot. at 27, but both cases are criminal cases addressing the Fourth Amendment and never even mention Article III or its requirements. That's Defendant's entire legal argument under Article III. Because Article III does not require a violation of a reasonable expectation of privacy to establish an injury Defendant's argument must be rejected.

Defendant's Article III standing arguments also lack any basis in the factual allegations in the FAC. Defendant asserts that the FAC only alleges the collection of "metadata associated with visiting a

[1] Defendant also criticizes "boilerplate" allegations that could be used to apply to other businesses as part of its presentation designed to denigrate Plaintiff and his attorneys. Mot. at 18, Mot. at 18 n.22. Nothing in the Federal Rules of Civil Procedure entitle Defendant to bespoke allegations of its wrongdoing, and when Defendant and countless other companies use the exact same technology to violate the privacy rights of consumers that visit their websites then the allegations describing that technology and how it violated California law *should* be pretty similar. If Defendant desires unique allegations, then Defendant needs to get original in how it chooses to violate the privacy rights of potentially millions of Californians and stop using the exact same technology to commit the exact same crime as countless other defendants.

commercial website" and IP addresses, but "merely visiting a public website can hardly cause any concrete injury from its collection of admittedly *anonymous* data." Mot. at 27-28, 32 n.34 (arguing that if collecting IP addresses is illegal then "the Internet literally would not work"). Except that doesn't even accurately describe the factual allegations regarding Plaintiff's visit to Defendant's Website or Defendant's violation of Plaintiff's privacy. In brief, the FAC alleges Defendant installed the TikTok Software that gathered "device and browser information, geographic information, referral tracking, and URL tracking by running code or 'scripts' on the Website to send the visitor's details to TikTok." FAC ¶ 14. This obviously extends far beyond just IP addresses and metadata and Defendant provides no explanation for how it can plausibly call the allegations describing the information collected as just IP addresses and metadata. Finally, Defendant implicitly argues that the collection no trap and trace device (whether through the internet or a telephone line) can ever cause an Article III injury because it only collects anonymous data which cannot cause a concrete injury. There's no legal basis for this argument whatsoever, and it also flatly contradicts Plaintiff's allegations and theory of the case. The FAC alleges that the TikTok Software allowed TikTok to collect massive amounts of otherwise-anonymous personal data that allowed TikTok to build a digital fingerprint of each anonymous person whose data it has collected (regardless of whether the individual has a TikTok account) and, "just like with fingerprints, a person can be conclusively identified through matching data points." FAC ¶¶ 13-14. Thus, the allegation is that the TikTok Software allowed TikTok and Defendants to personally identify individuals from anonymous data and in effect profit from stripping unsuspecting website visitors of anonymity.

The instant action is remarkably similar to the allegations the Ninth Circuit found sufficient *In re Facebook*, where it also noted it would be simply "untenable" to think that "federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data." *In re Facebook*. (quoting *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019)). And yet the inescapable conclusion of Defendant's Article III standing arguments is that federal courts

are constitutionally powerless to enforce privacy laws, even for a physical trap and trace device attached to a phone line like the kind even Defendant concedes is illegal under state and federal law. This is because Plaintiff has apparently not alleged a "real" harm when he alleged his device, browser, and geographic information were tracked across multiple webpages, without his knowledge or consent, all so that people he does not know and has never met can use that data to build a profile that will allow them to identify everywhere else he visits even when he thinks he is anonymously browsing the internet. It's not clear what more could be alleged at this stage that could satisfy Defendant who thinks none of these constitute injuries real or valid enough to be heard in federal court. But thankfully, Defendant and social media companies do not get to decide if their conduct and the injuries they caused to Plaintiff and countless others alleged in the FAC are "real" enough.

Many other courts have reached identical conclusions. *See, e.g., Cantu v. Tractor Supply Co.*, No. 2:23-CV-3027-HDV-JC, 2024 WL 1601257, at *2 (C.D. Cal. Mar. 21, 2024) (finding it sufficient to establish a concrete injury under *TransUnion* when a website's disclosure "allowed Google (and any ordinary person) to readily identify Plaintiff's video-watching behavior ... for the purpose of retargeting Plaintiff in connection with Google advertising campaigns.") (citing and discussing additional cases). Binding Ninth Circuit precedent has explained that various rights codified in CIPA are substantive and not procedural rights that are sufficient for Article III standing. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) ("The Ninth Circuit has found that each of the statutory claims brought here codify substantive rights to privacy.") (citations omitted); *see also Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024). Indeed, when "a legislature had declared that an injury is legally redressable, courts afford due respect to that decision. A legislature may elevate a legally protected interest into an injury for Article III purposes, though it cannot use its lawmaking power to transform something that is not remotely harmful into something that is." *Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553, at *2 (N.D. Cal. Aug. 23, 2024) (cleaned up); *see also Yockey v.*

*Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023). Moreover, multiple courts have concluded that based on binding Ninth Circuit precedent a violation of CIPA creates a substantive right a violation of which is sufficient for Article III standing. *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *3 (S.D. Cal. Oct. 24, 2023).

It is also clear that these allegations are similarly sufficient to constitute an injury for purpose of establishing Plaintiff's statutory standing under Section 637.2, and Defendant simply and incorrectly assumes that CIPA applies the same standard for injury as it incorrectly argued under Article III. *See Shah*, 2024 WL 4539577, at *5 (concluding plaintiffs had sufficiently alleged statutory standing because "Plaintiffs have plausibly alleged that they were injured by being tracked across multiple visits for marketing and advertising purposes, and that they did not expect or agree to such tracking."); *see also Mirmalek*, 2024 WL 5102709, at *4 (same); *Lesh*, No. 24 CIV. 03132 (VM), 2025 WL 563358, at *3 (concluding that statutory standing was established because "Lesh alleges that CNN installed Trackers, owned by third-party entities, which then received his IP address for purposes of advertisement placement.").

**B. <u>The Court Has Specific Personal Jurisdiction Over CuriousityStream</u>**

The Ninth Circuit's April 21, 2025 en banc decision in *Briskin v. Shopify Inc.*, No. 22-15815, 2025 U.S. App. LEXIS 9410 * (9th Cir. Apr. 21, 2025), which concerns the allegations that a Canadian company intercepted the communications of individuals in California in violation of CIPA, Cal. Penal Code § 631(a), compels the conclusion that this Court has specific personal jurisdiction over CuriosityStream with respect to Plaintiff's CIPA claim.

In *Briskin*, the Court held that Shopify, a nonresident corporation operating an online payment service, was subject to suit in California based on the following conduct: Shopify partnered with a third-party online vendor to embed Shopify code on the vendors's website – code that harvested data from the devices of individuals in California and transmitted it to Shopify for commercial purposes. *Id.* The Court

found that the described conduct met the "express aiming" at California prong of the Calder/Effects test – the test used by Ninth Circuit courts to determine whether the "purposeful direction" requirement to establish specific personal jurisdiction over an out-of-state defendant has been satisfied. *Id.*, at *17-18; *34-37. Central to that finding was the Court's determination that the harvesting or interception of data from the devices in California constituted an "entry into the state of California by electronic means." *Id.*, at *37. Such entry represented "a relevant contact with the forum state[,]" i.e., California, for purposes of specific personal jurisdiction. *Id.*

As demonstrated below, the facts and allegations before the Court here are substantially similar to those at bar in *Briskin*. Further, *Briskin* rejects the arguments made by CuriosityStream in the Motion, that its website's collection and dissemination of private data through use of the TikTok Software is aimed at persons and devices located everywhere in the same manner, that activity cannot constitute "express aiming" at California.

### 1. The "Minimum Contacts" and Calder/Effects Tests

The Ninth Circuit applies a 3-part "minimum contacts" test for specific personal jurisdiction over a non-resident (or on-domiciled defendant, such as CuriosityStream: "(1) the non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *See, e.g., Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023).

Where, as here, a case is based on an alleged tort, courts often assess whether a Plaintiff has shown that purposeful direction at the forum has been satisfied using the three-part *Calder* "effects test." *See Freestream*, 905 F.3d at 603-04. Under the *Calder* test, a plaintiff must allege a defendant: "(1)

committed an intentional act[;] (2) expressly aimed at the forum state[;] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "In the context of tort claims, the Supreme Court has held that the purposeful direction requirement is met where the defendants intended to and did indeed cause injury within the forum state, even though the actions that gave rise to the effects took place outside the forum." *Calder v. Jones*, 465 U.S. 783 (1985)

**2. <u>Briskin Dictates the Personal Jurisdiction Analysis</u>**

*a.* ***Briskin v. Shopify***

In *Briskin*, the plaintiff, Brandon Briskin, alleged he used his iPhone to purchase athletic wear from an online merchant from the merchant's website. 2025 U.S. App. LEXIS 9410 *, at *13. In completing the purchase, he entered his name, the relevant addresses, his phone number and credit card information into a "checkout form" that bore the name of the merchant. *Id.* When, after entering such data, Briskin "clicked the 'Pay now' button" on the merchant's website, "the newly installed Shopify software code sent his name and payment details to Shopify's servers." *Id.*, at *15. The merchant had embedded the Shopify code within its website. *See id.*, at *14 ("Merchants pay to access Shopify's software, with "[s]ome [ ] elect[ing] to embed Shopify assets, such as payment forms, into their own websites…"); *see also* Second Amended Complaint filed on January 24, 2022 in *Briskin v. Shopify Inc., et al.,* Case No. 4:21-cv-06269 (N.D. Cal) (Dkt.# 44), Shapiro Decl. Exhibit K, ¶¶ 1-2 (at 1:10-14, 18-19) (alleging that "Shopify created software code to enable merchants to integrate Shopify's payment forms into their applications" and listing the consequences of "a merchant integrat[ing] the Shopify software code into a website or mobile application[ ] …"). Briskin alleged that once his data was sent to Shopify, *inter alia*, Shopify "stores the data" and "creates user profiles using the collected data for the benefit of" merchants including those that have the Shopify code embedded on their websites. *Briskin*,

2025 U.S. App. LEXIS 9410 *, at *16. He further alleged that Shopify benefited financially from using the data it had intercepted. *Id.*

Based on these allegations, the Ninth Circuit found that Briskin had "made a *prima facie* showing of jurisdictional facts sufficient to establish that Shopify ***purposely directed its conduct toward California***." *Id.*, at *35 (emphasis added). The Court explained that Shopify was alleged to have "target[ed] California consumers to extract, collect, maintain, distribute and exploit for its own profit" without consumers' consent both (1) private information they entered to complete purchases, and (2) "personal identifying information" that Shopify's code installed on the their devices collected. *Id.* This "business model" established that Shopify had "expressly aimed its conduct at California" through its treatment of consumers' data in a manner violating CIPA. *Id.*, at *36. The Court further noted that the fact the effect of this conduct was felt in California was not "mere happenstance"; Shopify was alleged to have access to the geolocation of consumers due to the operation of Shopify's code. *Id.*

The *Briskin* Court expressly rejected Shopify's argument that it was not subject to personal jurisdiction in California based on the fact that it carries out these activities on a "location-agnostic' basis – in other words, it extracts data from devices the same way wherever they are located. *Id.*, at *37. The Court explained that *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 363 (2021), had "rejected the argument that because a nationwide company is everywhere, it is jurisdictionally nowhere except in its principal place of business and state of incorporation." *Id.*, at *37-38.

Additionally, the Ninth Circuit found that Briskin's Second Amended Complaint met the requirement – for personal jurisdiction over an out-of-state defendant – that a plaintiff's claims "arise out of" or "relate to" the defendant's ties to the forum. *Id.*, at *45-46. It determined that Briskin's claims (1) arose out of "Shopify's contact with [his] device, which Shopify allegedly knew was in California"; and (2) related to "Shopify's California contacts" because Briskin had alleged injury of the type that would tend to be caused by the "extracti[on] of personal data" from devices in California *Id.*, at *46.

Finally, the Ninth Circuit found that because Briskin had alleged sufficient facts to meet the first two prongs of the minimum contacts test, the burden shifted to Shopify to "present a compelling case" that the exercise of jurisdiction over it would not be reasonable. *Id.*, at *46 (quoting *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004)). It rejected the case offered by Shopify, consisting of arguments that (1) the relationship of its alleged conduct to California was minimal, and (2) it would be unfair to subject it to specific jurisdiction "in all 50 states." *Id.*, at *48. The Court reasoned that while it may be the case that Shopify is subject to such wide jurisdiction, that result would not be unfair "if the contacts Shopify makes in all 50 states are like its California contacts." *Id.*

### *b. **The Facts Here Mirror Those in Briskin***

The facts here are substantially similar to those before the Ninth Circuit in *Briskin*. CuriosityStream, a Maryland website operator, embedded software created by a third party, TikTok, into its website; that code causes users' devices—while those users are located in California—to transmit personal information, including device and browser metadata, to TikTok, a California-based company. FAC, ¶¶ 11, 13-20. The TikTok Software acts uniformly on visitors and "gather[s,]" *inter alia*, "device and browser information, ***geographic information*** [and] referral tracking." FAC, ¶ 14; *see also* Shapiro Decl. Ex. B (stating that the "TikTok Pixel," TikTok's name for the "TikTok Software" referenced in the FAC and here, "collects information available via standard web browsers, like Chrome" including information "[u]sed to determine geographic location of an event[,]" such as the landing on the homepage of a website). Thus, like Shopify in *Briskin*, ***Defendant is alleged to have had access to the geolocation of the devices of Plaintiff and members of the Class proposed in this case when they visited its Website.*** The TikTok Software on the Website requests consumers' private data to be transmitted from their devices to TikTok for "fingerprinting" purposes. *See* FAC ¶¶ 14-17.

Moreover, the FAC alleges that Defendant "extract[s], collect[s], maintain[s], distribute[s] and exploit[s] for its own profit," *Briskin*, 2025 U.S. App. LEXIS 9410 *, at *34, the private data of Plaintiff

and Class members through the operation of the TikTok Software on the Website. The identification process described in the FAC, violating Penal Code § 638.51(a), served Defendant's financial interests by improving its ability to advertise its product to visitors through future targeting. *See* FAC ¶¶ 11, 15 (data about a visitor is "sent to TikTok so that TikTok can identify the visitor with greater certainty, ***so that [he] can be targeted for marketing and advertisement in the future***" (emphasis added)).

Plaintiff has thus, under *Briskin*, sufficiently alleged that CuriosityStream purposefully directed conduct at California – that CuriosityStream (1) engaged in intentional conduct (sending instructions to devices to transmit data to TikTok), (2) expressly aimed at California (where Plaintiff's and members of the proposed class' devices were) and (3) causing harm (the unauthorized theft of consumers' private data) that CuriosityStream, by virtue of its access to geographic data about Website visitors' devices, knew would occur in California. Plaintiff has further alleged that TikTok is a California-based company, and that CuriosityStream availed itself of the benefits of doing business in the state by "partner[ing]" with TikTok to engage in the data extraction and exploitation that is the subject of this action. *Id.*, ¶ 11. Under the allegations of the FAC, Defendant is causing private data to be transmitted to a company with headquarters in California, where it likely makes decisions about whether and how such data will be used and exploited, or exposed to additional third parties.

Similar to plaintiff's § 631(a) claim in *Briskin*, here Plaintiff's § 638.51(a) claim (1) directly arose from Defendant's entry into California directing the transmission of his private data to TikTok, and (2) is related to (a) that entry, which resulted in his identity being revealed, and (b) more generally, to Defendant's "business model" of intercepting data from devices in California and transmitting it to TikTok to enhance its advertising capabilities and finances.

Finally, CuriosityStream has not argued that it would be unduly burdensome for it to defend this claim in California. As a "factual content streaming service and media company that provides premium video and audio programming services," (FAC, ¶ 9), it is no doubt frequently required to conduct

business in California, where many of the nation's largest entertainment and media companies are headquartered. As demonstrated above, the nature and extent of Defendant's extraction and dissemination of private data from consumers in California, like that of Shopify's conduct in *Briskin*, render this Court's exercise of personal jurisdiction over the it constitutionally reasonable.

In short, *Briskin* requires the denial of Defendant's motion to dismiss the FAC under Fed. R. Civ. P. 12(b)(2).

### 3. ***Conohan v. Rad Power Bikes* Lends Further Support to the Exercise of Personal Jurisdiction over CuriosityStream**

In *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 U.S. Dist. LEXIS 72865, at *12 (C.D. Cal. Apr. 3, 2025), Magistrate Judge Castillo denied a motion to dismiss under Fed. R. Civ. P. 12(b)(2) on nearly identical allegations about the same TikTok software operating on CuriosityStream's website, as it operated on the website of a bicycle retailer. He found that the plaintiff's allegations there that the retailer "purposefully directed its activities to California by regularly engaging with California residents through its website and its retail stores and by sharing user data with TikTok in California" were "sufficient to support the exercise of specific personal jurisdiction over" the retailer. *Id.* at *6.

The court found that the first element of the *Calder* effects test was met by the plaintiff's allegation that the retailer had "intentionally, and as a matter of policy, gather[ed] device and browser information, geographic information, [and] tracking from California visitors to [its] [w]ebsite [ . . . ] and sends the details to TikTok …" *Id.* at *6-7. It further found that the allegation of the transmission of data to TikTok established that the plaintiff's claim arose from the retailer's contacts with the state. *Id.* at *7-*8. As to the third *Calder* element, the court ruled that it had been "easily satisfied" by the plaintiff because the retailer "knew—or should have known" that in light of "California's robust privacy protections," its data extraction and transmission would "cause harm to California residents." *Id.* at *8-9

(citing *Keskinen v. Lush Handmade Cosms. LLC*, No. 2:24-CV-08860-HDV-SK, 2025 WL 851074, at *3 (C.D. Cal. Mar. 11, 2025)).

### 4. Each of CuriosityStream's Arguments Against Personal Jurisdiction Rely Upon Principles Explicitly Rejected in *Briskin*

Defendant's principal argument for dismissal under Rule 12(b)(2) is that its Website is "nationwide," and therefore the operation of the Website "does not constitute express aiming at California..." *See* Mot., at 25:21-23. According to Defendant, "[w]ebsite analytic tools generally deployed on a company's website ***do not specifically target any particular state***, and therefore specific jurisdiction [over the company for those tools] is lacking" in any state other than the company's domicile. *Id.*, at 21:18-22 (citing *Rosenthal v. Bloomingdales.com, LLC* (1st Cir. 2024) 101 F.4th 90, 93; *Hasson v. FullStory, Inc.*, 114 F.4th 181, 192 (3d Cir. 2024); *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018)). This argument is foreclosed by *Briskin*, which overruled any requirement in Ninth Circuit law requiring a plaintiff to show that an out of state website operator extracting data from devices everywhere, including California, treat persons in California whose data is extracted ***differently from those in other states or locations***, in order to defeat a Rule 12(b)(2) motion. *See Briskin*, 2025 U.S. App. LEXIS 9410 *, at *37-38.

All of the caselaw cited by Defendant in support of this argument, following *Briskin* is outdated or no longer persuasive. This includes the following decisions, each of which found a lack of personal jurisdiction over out-of-state website operator defendants where the allegations or facts at bar indicated "location agnostic" prohibited data collection or interception by the website in question: *Bloomingdales.com LLC*, *FullStory, Inc.*, *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1171–72 (C.D. Cal. 2024), *Conohan v. Gen Digital Inc.*, No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655, at *2 (C.D. Cal. Feb. 19, 2025); *Carroll v. The J.M. Smucker Company*, No. 3:22-cv-08952-WHA, 2023 WL

4053796, *5 (N.D. Cal. Jun15, 2023); and *Massie v. Gen. Motors Co.*, 2021 WL 2142728, *6 (E.D. Cal. May 26, 2021). *Matus v. Premium Nutraceuticals*, LLC, 715 F. App'x 662, 663 (9th Cir. 2018), is inapposite, as that case involved allegations that a website operator published false advertising on its website.

**C. Plaintiff States a Claim That Defendant Violated CIPA**

**1. CIPA's Prohibition On Trap And Trace Devices Applies To The TikTok Software and Internet Communications**

It is very clear from the relevant terms and their statutory definitions that CIPA's prohibition on trap and trace devices in § 638.51 applies to the internet, despite Defendant's numerous bolded yet unexplained assertions. Plaintiff asserts that Defendant violated California's Trap and Trace Law. California Penal Code § 638.51 provides, in pertinent part, as follows:

> (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.
> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
> (1) To operate, maintain, and test a wire or electronic communication service.
> * * *
> (5) If the consent of the user of that service has been obtained.

Thus, to state a claim under § 638.51 plaintiffs need to allege facts establishing, at most, that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. *Id*. § 638.51. California law defines a "trap and trace device" as:

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

Cal. Penal Code § 638.50(c). The Trap and Trace Law further specifies that the terms "wire communication" and "electronic communication" shall "have the meanings set forth in subdivision (a) of Section 629.51." *Id.* § 638.50(a). The definition for "electronic communication" in § 629.51(a)(2) states that, subject to certain exceptions not relevant here, electronic communication means "any transfer of

signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." Applying this definition for electronic communication to the definition of a trap and trace device in § 638.50(c) clearly shows that trap and trace devices can encompass "a wire, radio, electromagnetic, photoelectric, or photo-optical system."

Notably, Defendant spends very little space addressing the actual statutory sections discussed above that every court has relied on and found central to their decisions. Defendant instead raises a hodgepodge of largely unrelated cases and arguments, all of which are either entirely irrelevant, have already been roundly rejected by the courts, or simply ignore the relevant authorities. But, as Judge Breyer in the Northern District explained:

> As the *Shah* and *Greenley* courts held, "the Court cannot ignore the expansive language in the California Legislature's chosen definition of pen register," which is "specific as to the type of data collected," but "vague and inclusive as to the form of the collection tool" (i.e. "device or process").

*Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley*, 684 F. Supp. 3d at 1050 and *Shah*, 2024 WL 4539577, at *1) (cleaned up). "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute)." *Lungren v. Deukmejian*, 45 Cal. 3d 727, 735 (1988) (citations omitted); *see also Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) ("If the language is clear, courts must generally follow its plain meaning . . ."). Multiple state court judges have also reached the same exact conclusion in reasoned opinions clearly drafted by the judge as opposed to, for example, simply issuing a party's proposed statement of decision. *E.g.*, *Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 (July 31, 2024); *Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 (September 17, 2024); *Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024); *Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024).

**2. <u>The Internet isn't Going to Break</u>**

Defendant also makes a bold proclamation that if this Court adopts the interpretation of CIPA already adopted by many other courts it will "break the internet." It won't. Defendant's entire argument basically that websites routinely and sometimes need to collect IP addresses from visitors, and this would make that illegal. But Plaintiff's allegations are clear that Defendant did not violate the law because it collected IP addresses. Except FAC doesn't even contain any allegations about IP addresses. But it does allege "[t]he TikTok Software gathers data including device and browser information, geographic information, referral tracking, and url tracking." FAC ¶ 14. Defendant instead makes the baseless factual assertion not found in the FAC that all of this information is nothing more than IP addresses. That's simply not what is alleged, nor would collecting such a limited amount of information even accomplish the sole purpose for Defendant and TikTok using the TikTok Software. The FAC instead clearly alleges that the TikTok Software exists because it was "designed solely to meet this objective." FAC ¶ 20. The TikTok Software collected everything it could because "[t]he TikTok Software acts via a process known as 'fingerprinting.' Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." FAC ¶ 13. Defendant could not have achieved that by recording just IP addresses, and if Defendant could have then it would have.

Defendant also makes a bold proclamation that it "is therefore not hyperbole to state that Plaintiff's interpretation of this law would criminalize the Internet." Mot. at 32 n. 34. It won't. Defendant's entire argument basically that websites routinely and sometimes need to collect IP addresses from visitors, and a ruling for Plaintiff makes that a criminal act. But that's not the law and it's not what Plaintiff alleges in the Complaint. Plaintiff's allegations are clear that Defendant did not violate the law *solely* because it collected Plaintiff's IP address. Defendant *also* assisted TikTok in acquiring a vast amount of information about Plaintiff, everything it could, including his IP address, browser data, device data, even geographic information, all in order to use that data to fingerprint and

de-anonymize him. Defendant could not have achieved that by recording just IP addresses, if it could have it would have. The FAC instead alleges that the TikTok Software exists because it was "designed solely to meet this objective." FAC ¶ 20. Stated more simply, nothing about running a website on the internet required Defendant to cause Plaintiff's personal information to be sent to TikTok in order to de-anonymize his visit to Defendant's website. That was simply a choice Defendant made for its own financial gain in violation of California law, and Plaintiff is entitled to seek redress for that violation of his rights in Court.

### 3. <u>Defendant's Additional Statutory Arguments Lack Legal Basis</u>

#### *a. The Trap And Trace Law's Authorization For Court Orders*

Against the great weight of authority Defendant argues only that the section addressing court orders for a trap and trace devices contains two references to phone lines. The provisions in Section 638.52(d)(1) and (3) merely require that a court order for a trap and trace device that "is to be attached" to a phone line must specify the listed name and number, respectively. Nothing about this procedural requirement alters the definition of trap and trace devices in Section 638.50(c) or even limits court orders authorizing trap and trace devices to phone lines. And, even if it did, that would only mean that law enforcement, just like everyone else, cannot legally use trap and trace devices on internet communications. Far from an absurd result, it is clear the Legislature intended for Defendant to never be able to seek a court order authorizing the installation of a trap and trace device *because that is a crime* and also because *Defendant is not a law enforcement entity*. The California Legislature intended for Defendant to never install trap and trace devices of any kind, and for law enforcement to do so only for phone lines and subject to the statutory procedures and requirements for a court order. Perhaps unsurprisingly, it was also perfectly reasonable for the California Legislature to decide not to authorize law enforcement entities like LAPD to run massive worldwide social media networks that collect data on millions of Americans and billions of people worldwide. Defendant makes many arguments based around CIPA's provisions for court orders

but ignores the most obvious conclusions of all – CIPA broadly prohibits Trap and Trace devices for everyone, and there is only a limited exception which doesn't apply to Defendant because Defendant shouldn't be running Trap and Trace Devices.

### *b. The California Consumer Privacy Act ("CCPA") Does Not Conflict With CIPA*

Defendant makes no actual legal argument for why the CCPA is relevant to interpreting section 631(a) of CIPA. It states that the CCPA "comprehensively regulates the data collection and sharing practices Plaintiff complains about in the Complaint," Mot. at 32-33, but nowhere does Defendant cite to any legal doctrine explaining why or how a framework, even a purportedly comprehensive one, is relevant to interpreting CIPA. The closest legal doctrine that would support a newer statute displacing an older statute or requiring it to be interpreted more narrowly despite the absence of any such language is repeal by implication. But repeals by implication they are disfavored when interpreting California statutes. *Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627, 637 (2018) ("We do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied.") (citation omitted). To invoke the doctrine of implied repeal there must be no rational basis for harmonizing the two statutes, and the statutes must be "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." *Id.* (cleaned up). Defendant makes no such argument, and no such repugnancy or even conflict exists because Defendant cites no CCPA provisions requiring it to violate CIPA.

Defendant also plainly ignores the plain text of the CCPA stating that "law relating to consumers' personal information should be construed to harmonize with the provisions of this title." Cal. Civ. Code § 1798.175. It also explicitly states that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id.* Thus, even if there were a conflict between CIPA and the CCPA, something

Defendant does not argue, the CCPA itself requires CIPA's application in this case because of CIPA's greater consumer privacy protections. In short, Defendant wishes the CCPA applied and not CIPA, but unfortunately its wish has no basis in rules of statutory interpretation.

*c.* ***Defendant Incorrectly Confuses Different CIPA Provisions***

Finally, Defendant improperly uses language from § 629.51(b) to try to read the Trap and Trace Law as only applying to communications "in transit" that are intercepted by third-parties, or incorporating language, doctrine, or defenses in completely unrelated provisions of CIPA. Mot. at 16, 28-31.

Defendant incorrectly quotes language from § 629.51(b) that is clearly not incorporated into the Trap and Trace Law because it is not part of the "definitions" from § 629.51. Moreover, § 629.51(b) is also very clear that when it refers to the interpretive limitations of "this chapter" that means Chapter 1.4 of the Penal Code where that provision is found. This provision did not somehow secretly alter the meaning of CIPA because CIPA was enacted as part of a different chapter, Chapter 1.5 of the Penal Code. Defendant similarly cites not relevant authority imposing a "transit" requirement or extending the judicially created immunity for parties wiretapping their own communications found in § 631 to other completely unrelated provisions of CIPA where they make absolutely no sense. These arguments are based on gross misinterpretations of the cited statutory provisions. *Rad Power Bikes*, No. CV 25-0106 PVC, 2025 U.S. Dist. LEXIS 72865, at *11 (C.D. Cal. Apr. 3, 2025) (rejecting Defendant's counsel's attempt to make the exact same argument).

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the Complaint deficient.

DATED: April 30, 2025 **TAULER SMITH LLP**

By: */s/ Narain Kumar*

Narain Kumar, Esq.
Attorneys for Plaintiff
Christopher Mitchener