LYNN R. FIORENTINO (SBN 226691)
lynn.fiorentino@afslaw.com
SUSANNE BONIADI (SBN 341512)
susanne.boniadi@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401

Attorneys for Defendant
CURIOSITYSTREAM INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER MITCHENER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CURIOSITYSTREAM INC., a Delaware corporation,

Defendant.

Case No. 5:25-cv-01471-NW

**CLASS ACTION**

**DEFENDANT CURIOSITYSTREAM INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date:
Time: 9:00 a.m.
Courtroom: Courtroom 3 – 5th Floor
Judge: Noël Wise

Date Action Filed: February 12, 2025

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 7

II. PLAINTIFF CONTINUES TO CONSPICUOUSLY FAIL TO IDENTIFY ANY CONCRETE HARM FROM VISITING A COMMERCIAL WEBSITE, AND DOING NOTHING MORE. ..... 8

III. PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING THAT THIS COURT MAY EXERCISE SPECIFIC PERSONAL JURISDICTION OVER CURIOSITYSTREAM. ..... 13

IV. TRAP AND TRACE DEVICES ARE EXPRESSLY LIMITED TO THIRD-PARTY INTERCEPTIONS, AND ARE STRICTLY LIMITED TO TELEPHONE LINES. ..... 17

V. THE CCPA COMPREHENSIVELY REGULATES ONLINE PRIVACY ISSUES. ..... 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACA Int'l v. Fed. Commc'ns Comm'n*,
885 F.3d 687 (D.C. Cir. 2018) ........ 16

*Aviles v. Liveramp, Inc.*,
No. 24STCV19869, 2025 WL 487196 (Cal.Super. Jan. 28, 2025) ........ 12

*Briskin v. Shopify, Inc.*,
No. 22-15815, 2025 WL 1154075, at *11 (9th Cir. Apr. 21, 2025) ........ 3, 11

*Conohan v. Gen Digital, Inc.*,
No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655 (C.D. Cal. Feb. 19, 2025)........ 9, 10

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)........ 9, 14, 16

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) ........ 3, 4, 6

*Dehne v. Avanino*,
219 F. Supp. 2d 1096 (D. Nev. 2001) ........ 16

*In re Facebook*,
956 F.3d 589 (9th Cir. 2020)........ 6

*Fregosa v. Mashable, Inc.*,
No. 25-CV-01094-CRB, 2025 WL 1083214 (N.D. Cal. Apr. 10, 2025)........ 10

*Gabrielli v. Insider, Inc.*,
No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ........ 9

*Grayned v. City of Rockford*,
408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ........ 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 6

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024)........ 11

*Hayes v. Cnty. of San Diego*,
658 F.3d 867 (9th Cir. 2011)........ 7

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 5, 6

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163, 1171-72 (C.D. Cal. 2024) ........ 10

*Hughes v. Vivint, Inc.*,
No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024) ........ 8

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 8

*Jacqueline B. v. Rawls Law Group, P.C.*,
68 Cal.App.5th 243 (2021) ........ 12

*Jones v. Bloomingdales.com, LLC*,
124 F.4th 535 (8th Cir. 2024) ........ 4

*Kauffman v. Home Depot, Inc.*,
No. 23-CV-0259-AGS-AHG, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024) ........ 11

*Lightoller v. Jetblue Airways Corp.*,
No. 3:23-cv-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 9

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218, 1228 (9th Cir. 2011) ........ 10

*Moody v. C2 Educ. Sys. Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) ........ 7

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 6, 7, 14

*In re Online DVD Rental Antitrust Litig.*,
2011 WL 5883772 (N.D. Cal. Nov. 23, 2011) ........ 5

*Reyes v. Wells Fargo Bank*,
2017 WL 11568871 (C.D. Cal. Aug. 17, 2017) ........ 5

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ........ 6, 7, 13, 14

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 65409 (C.D. Cal. Jan. 8, 2025) ........ 7, 14

*Rosenthal v. Bloomingdales.com, LLC*,
101 F.4th 90 (1st Cir. 2024) ........ 11

*Sanchez v. Cars.com Inc.*,
Case No. 24STCV13201 (Cal.Super. Jan. 27, 2025) ........ 16

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 5, 6, 16

*Shapiro v. United States*,
335 U.S. 1 (1948) .......... 16

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) .......... 10

*Speidel v. Markota*,
2021 WL 3463895 (C.D. Cal. 2021) .......... 10

*In re The Application of the United States of America for an Order Authorizing the use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) .......... 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 8, 14

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 4, 5, 6

*Walden v. Fiore*,
571 U.S. 277, 285 (2014) .......... 10

*In re Yochum*,
89 F.3d 661 (9th Cir. 1996) .......... 15

**Statutes**

18 U.S.C. § 3127(3)(4) .......... 16

Cal. Bus. & Prof. Code § 22575 .......... 17

Cal. Penal Code § 629.51 .......... 13, 14, 15

Cal. Penal Code § 631 .......... 7

Cal. Penal Code § 637.2 .......... 6

Cal. Penal Code § 638.50 .......... 13, 14, 15

Cal. Penal Code § 638.51 .......... *passim*

Cal. Penal Code § 638.52(d) .......... 3

Section 1798.175 .......... 17

**Other Authorities**

Article III of the Constitution with the Fourth Amendment ........ 5

California Consumer Privacy Act ........ 4, 17

California Invasion of Privacy Act (CIPA) ........ *passim*

Ninth Circuit's *Schwarzenegger* ........ 9, 10, 13

Senate Bill 690 ........ 17

Thus, *C2* ........ 14

Trap and Trace Law ........ 14

## I. INTRODUCTION

Plaintiff's Opposition fails to address the key case law and arguments set forth in Defendant's Motion. First, he does not even attempt to distinguish the recent Ninth and Eighth Circuit *Bloomingdales.com* decisions holding that a plaintiff does not suffer ***any*** injury merely by visiting a website. For good reason, as the Courts of Appeal addressed the exact situation here: a plaintiff who "took [no] actions other than simply opening the webpage and then closing it" and who then complained her "information collected is transmitted to third parties."[1] That's *exactly* this case, and the Court should follow suit here.

Second, Plaintiff likewise does not dispute that CuriosityStream's website did not target him in any way, which is the real test for purposeful direction here. On the contrary, the only targeting that occurred here was by Plaintiff, no different than if he called a Maryland resident and their Caller ID "captured" his California telephone. This case is therefore nothing like the Ninth Circuit's recent *Shopify* decision, as CuriosityStream took no action to target Plaintiff, let alone with knowledge of his location.

Third, Plaintiff also does not dispute that his interpretation of Section 638.51 would apply to *anyone* collecting the telephone number of an incoming telephone call through their Caller ID. Indeed, telephone numbers were the *only* specific information the Legislature ever contemplated when enacting this law – meaning tens of millions of Californians would violate this law every day simply by receiving a phone call if Plaintiff's theory had any merit – which Plaintiff contends would be "merely surprising" but *not* an "absurd" result. Opp. at 2. And critically, Plaintiff's counsel also does not dispute that they would have ***no defense*** to liability under the trap-and-trace law– because the *only* exceptions to liability under this law apply to the "provider of [an] electronic or wire communication service" *or* a "peace officer" who obtains a court order (provided "the telephone line to which the pen register or trap and trace device is to be attached" is identified). Cal. Penal Code. §§ 638.51(b), 638.52(d). Thus, the Court can either accept Plaintiff's theory that the Legislature not only intended to *silently* criminalize ubiquitous telephone technology used by

---

[1] Mem. at 28 (citing *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024)).

**hundreds of millions** of Americans – through a law enforcement ***interception*** statute – but that this law should then be interpreted in the same way against website operators. Or the Court can interpret this law according to its plain language: this law ***only applies to <u>third-party</u> interceptions*** – expressly so. And under 50 years of binding CIPA precedent, which Plaintiff also conveniently ignores, a party to a communication does not "intercept" or "capture" information, it receives it.

Finally, the fact that Plaintiff concedes that there is no provision in the trap-and-trace statutes that would authorize a website operator, among other parties, to collect routine metadata – even with the other party's consent – should also signal to the Court that there must be another law that governs these online data exchanges. Of course, that law is the California Consumer Privacy Act (the "CCPA") – which provides consumers the right to know how their data is being used, and the right *to opt out*.

## II. <u>PLAINTIFF CONTINUES TO CONSPICUOUSLY FAIL TO IDENTIFY ANY CONCRETE HARM FROM VISITING A COMMERCIAL WEBSITE, AND DOING NOTHING MORE.</u>

CuriosityStream established that the Ninth Circuit has held multiple times that individuals have no reasonable expectation of privacy in the signaling information collected by the technology ostensibly at issue here. Mem. at 27 (citing, *e.g.*, *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008)). Both the Ninth and Eighth Circuits, among other courts, have recently addressed the exact issue presented here: whether a plaintiff suffers any concrete injury by visiting a website, doing nothing more, and having information related to that visit shared with third parties. Mem. at 27-28. And these courts have consistently answered this question in the negative. Indeed, the Ninth Circuit went out of its way to *sua sponte* hold that the plaintiff in *Daghaly* did not suffer any concrete injury by having information related to her website visit "transmitted to third parties." *Daghaly*, 2024 WL 5134350, at *1. The Eighth Circuit similarly held that not only was the plaintiff not injured "at all," but that "'[b]reezy declarations' of an intangible yet concrete injury without support won't suffice" to plausibly establish standing. *See Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024) (further holding website analytics technology "is akin to the commonplace use of a security camera at a brick-and-mortar store to record customers as they

shop" but "no reasonable customer at a brick-and-mortar store could claim a privacy interest" in being recorded).

As detailed at the outset, Plaintiff simply chose to ignore not only these recent appellate decisions, but also the lower court decisions dismissing these exact cookie-cutter trap-and-trace complaints. The only conclusion the Court can and should draw from Plaintiff's failure to address this authority is that he concedes it is fatal to his case.[2]

Instead, Plaintiff attempts to distinguish the earlier *Forrester* case by asserting that "Defendant apparently confused Article III of the Constitution with the Fourth Amendment." Opp. at 7. But this argument misses the fundamental point of *Forrester* as applied to these digital slip-and-fall cases: if the government can lock up a person for life because they don't need any permission to monitor that a *specific person* visited a *specific website*, on the ground that this person has no reasonable expectation of privacy in this data being exchanged across the Internet, how could Plaintiff possibly have *any* expectation that a website operator itself wouldn't collect the even more innocuous data at issue here when he visits that site? Put differently, whether analyzed under Article III, the Fourth Amendment, or CIPA itself, there can be no invasion of privacy if there is no reasonable expectation of privacy in the first place.

For the avoidance of doubt, numerous courts have expressly applied *Forrester* to CIPA claims to find that there is no standing for the same reason, i.e., that there is no reasonable expectation of privacy in the information collected at issue here – including the many state court decisions Plaintiff ignored in his Opposition. Mem. at 27, n.29. For example, Judge Donato held that "plaintiffs do not have standing to bring claims … for a violation of CIPA, because they have not plausibly alleged any privacy injuries." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (citing *Forrester* for proposition that "there is no legally protected interest in IP addresses" because "every computer or server connected to the Internet has a unique IP address.").[3]

---

[2] *See Reyes v. Wells Fargo Bank*, 2017 WL 11568871, at *4 (C.D. Cal. Aug. 17, 2017) (holding that plaintiff who failed to respond conceded defendant's argument, and collecting cases); *see also In re Online DVD Rental Antitrust Litig.,* 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) (failure to respond to argument on the merits "viewed as grounds for waiver or concession of the argument").

[3] With respect to Judge Lin, her decision in *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932

In fact, the court expressly distinguished the fact pattern of the inapposite *In re Facebook* case that Plaintiff similarly misapplies here.[4] That is, Judge Donato accurately distinguished when Facebook was collecting ***uniquely identifying information*** of the individuals ***visiting its website or app*** in *Heeger* – and finding no injury, because there is no reasonable expectation of privacy that a website operator is not collecting information that could identify the specific person who is visiting its website or app. *Id.* at 1180. By comparison, *In re Facebook* involved a situation when Meta – as an alleged ***third-party eavesdropper*** allegedly continued to monitor every website its identified users were visiting *after logging off Facebook*, "'**no matter how sensitive**' or personal users' browsing histories were." *Id.* at 598 (emphasis added). In sum, Judge Donato correctly concluded that what the plaintiffs in *Heeger* were complaining about was "a practice akin to a pen register recording the outgoing home numbers dialed" – and there is no reasonable expectation of privacy, ***or injury***, when a website operator collects this uniquely identifying information.[5] *Heeger*, 509 F. Supp. 3d at 1190; *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (relying on *Forrester* in CIPA case and holding "there is no reasonable expectation of privacy… when the information is not sensitive.").

Likewise, Plaintiff also repeatedly cites to Judge Klausner's earlier trap-and-trace decisions in *C2* and *Autotrader* for the proposition that "there is no credible dispute that Plaintiff has alleged an injury necessary for both § 637.2 and standing. … These allegations demonstrate that Defendant … collected Plaintiff's information, thereby constituting an invasion of privacy." Opp. at 6 (*citing*

---

(N.D. Cal. 2024), that the collection of an IP address alone is sufficient to state a claim cannot be squared with the Ninth Circuit's *Forrester* and the later *Bloomingdales.com* decision. But in her defense, it does not appear that the defendant ever briefed standing, as "Fandom reframed its position at oral argument as a challenge to Plaintiffs' statutory standing." *Id.* Thus, she only addressed *statutory* standing, and without any briefing. Under the party-presentation principle, decisions are generally only as good as the arguments the parties themselves make.

[4] Plaintiff makes much of this pre-*TransUnion* and pre-*Bloomingdales.com* decision of *In re Facebook*, 956 F.3d 589 (9th Cir. 2020), which even the *Bloomingdales.com* panel cited on its way to finding the exact "injury" here is no injury at all. Simply put, alleged third-party eavesdropping on expressly sensitive website activity is not remotely analogous to a commercial website operator collecting routine and anonymous metadata on its own website.

[5] One of the fundamental absurdities of these setup trap-and-trace cases is that if there's no reasonable expectation of privacy in *uniquely identifying information* like IP addresses that would allow a website operator to specifically isolate an individual website visitor, without more, then why would the collection of admittedly *otherwise anonymous* data present *more* of a "privacy invasion"? Of course, it doesn't.

*Moody v. C2 Educ. Sys. Inc.*, 2024 WL 3561367 (C.D. Cal. July 25, 2024)). But Plaintiff fails to inform the Court that someone did credibly dispute whether these trap-and-trace cases support any cognizable injury: **Judge Klausner** – who reconsidered his prior order and *sua sponte* asked for additional briefing, before dismissing the same cookie-cutter claim for lack of standing, *with prejudice*. *See Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025).

Judge Klausner's evolution in these cases is instructive. In *Autotrader*, the court was originally faced with both a Section 631 "interception" claim and a Section 638.51 pen register/trap-and-trace claim. *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 65409, at *4 (C.D. Cal. Jan. 8, 2025). As CuriosityStream previously established, these statutes are essentially two sides of the same coin: Section 631 addresses third-party interception of the *content* of a message while in transit, while Section 638.51 addresses the interception of the originating number (or other signaling information reasonably likely to identify the source), but *not* the content. Mem. at 12-18. Curiously, however, Judge Klausner dismissed the Section 631 claim because "the information must be sufficiently personal or sensitive that its disclosure is harmful," but he originally did not apply the same analysis to the Section 638.51 claim, instead referring back to his prior *C2* decision.[6] *Id.* Judge Klausner ultimately reversed course and concluded that the *same* analysis has to apply to both claims and dismissed the Section 638.51 claim. *Autotrader*, 2025 WL 1085787 at 1 (holding "the same standing analysis applied to her § 638.51 claim [and] the Court concludes that Plaintiff's § 638.51 claim also fails.").

[6] To reiterate, however, what many federal district courts fail to appreciate is that under binding California state appellate court decisions, such as *Nakai* and *Cho* involving sexual chats extensively briefed by Defendant, Mem. at 14, and ignored in Plaintiff's Opposition, it is difficult to imagine *any* Internet-based communications that California courts would attach *any* reasonable expectation of privacy. And for the avoidance of doubt, federal district courts are bound to follow the analysis of state appellate courts. *See Hayes v. Cnty. of San Diego*, 658 F.3d 867, 870 (9th Cir. 2011), *certified question answered*, 57 Cal. 4th 622 (2013) ("In deciding an issue of state law, when 'there is relevant precedent from the state's intermediate appellate court, the federal court **must follow** the state intermediate appellate court decision") (emphasis added). Point being, if one's pedophilic conversations with a fake 12-year-old are not private under binding California case law, why would anyone attach remotely legitimate privacy expectations to the fact that a person is using Windows, the Google Chrome browser, or lives in California – all the makeweight "invasions of privacy" that Plaintiff is absurdly objecting to here.

Ultimately, as Judge Wu correctly noted in dismissing an otherwise identical Tauler Smith trap-and-trace complaint, there has to be "a close historical or common-law analogue for their asserted injury." *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *3 (C.D. Cal. July 12, 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Here, however, Plaintiff merely parrots the term "right to privacy" several times, Opp. at 6, without recognizing that the "right to privacy" is *not* a common-law *claim*. Rather, intrusion upon *seclusion* and public disclosure of *private* facts are the actual torts that would need to be closely approximated. And Plaintiff understandably never attempts to establish how visiting a commercial entity's *public* website on the *public* Internet, where *anonymous* metadata is allegedly collected, is remotely close to these historical torts. Of course, it's not. He also never attempts to meet his burden of establishing *how* this anonymous information allegedly collected to *possibly* identify website visitors is remotely "sensitive." That is, he objects to the collection of "his device, browser, and geographic information," Opp. at 9, but understandably never explains how identifying that a person is one of the 3.45 *billion* individuals that use Google Chrome,[7] or less specific information than contained in a phonebook, can possibly be sensitive. Again, of course, it's not. And Plaintiff also doesn't dispute that the Court's and Tauler Smith's own websites, among many others, are **admittedly collecting the *exact same* information**. Mem. at 9-10.[8]

Indeed, as numerous courts have found, even where information that is collected and disclosed is personally identifiable by itself, that still does not amount to concrete harm, let alone one close to a common-law tort. *See, e.g., I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (finding collection and disclosure of "basic contact information, including one's email address, phone number, or Facebook or Zynga username" to be insufficiently concrete to confer standing as there is "an insufficient fit between the loss of information alleged here and the common

---

[7] *See* https://backlinko.com/chrome-users.

[8] As another example, over 200 million Americans are users of LinkedIn, which permits every such user the ability to see "who's viewed your profile." Under Plaintiff's theory – that it violates California criminal law to use a service that *possibly* allows you to see who visited a website – why would Judge Tigar, https://www.linkedin.com/in/jon-s-tigar-321b61b2/, and numerous other colleagues, friends, and family members of the Court not be violating this law for the same reason?

law privacy torts of private disclosure of private facts and intrusion upon seclusion"); *Lightoller v. Jetblue Airways Corp.*, No. 3:23-cv-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (same); *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025) (dismissing trap-and-trace complaint with prejudice because lack of any harm associated with collection of anonymous metadata "cannot be cured with an amendment.").

At bottom, "how dare your public website collect the anonymous signaling information my browser is disclosing to it" is not a claim that has a remotely close common-law analogue. As the Court of Appeal and numerous other courts have held in indistinguishable circumstances, these digital slip-and-fall claims are devoid of any actual injury and should be dismissed on this ground alone, with prejudice.

## III. PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING THAT THIS COURT MAY EXERCISE SPECIFIC PERSONAL JURISDICTION OVER CURIOSITYSTREAM.

CuriosityStream also demonstrated that the Court lacks personal jurisdiction over CuriosityStream because (1) it is a Delaware corporation not subject to general jurisdiction in California, Mem. at 20-21 and (2) specific jurisdiction is also lacking, as CuriosityStream's website at issue, and its alleged collection of otherwise anonymous metadata, is not purposefully targeted at California residents in any way. Mem. at 21-26. Indeed, numerous courts have dismissed identical Tauler Smith trap-and-trace complaints filed against out-of-state defendants for also allegedly incorporating the TikTok software on its website. *Conohan v. Gen Digital, Inc.*, No. 2:24-CV-06894-MCS-PVC, 2025 WL 864655, at *2 (C.D. Cal. Feb. 19, 2025)[9] (holding that the

---

[9] Plaintiff cites to the magistrate judge's decision *Rad Power Bikes*, Opp. at 16, without noting that Magistrate Judge Castillo was oddly the magistrate in *Gen Digital*, but he refused to even acknowledge that Judge Scarsi rejected every argument Plaintiff's counsel made – and that was expressly briefed in *Rad Power Bikes*. Instead of addressing these arguments, he simply ignored them – refusing to even acknowledge *Gen Digital*, which is respectfully not reasoned decisionmaking. Similarly, he found that Rad Power Bikes "expressly aimed" its conduct at California – the second *Calder* element – because of "its nine retail outlets, four are in California." *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246, at *3 (C.D. Cal. Apr. 3, 2025). This analysis is clearly erroneous because these claims have *nothing* to do with the sales of the defendants' products or services, let alone in their brick-and-mortar locations. In short, this decision directly conflicts with the Ninth Circuit's *Schwarzenegger* holding. *See Gen Digital*, 2025 WL 864655, at *2 ("the claim **must be one which arises out of or relates to the defendant's forum-related activities**") (emphasis added).

applicable purposeful direction requires weighing "whether the defendant '**individually targeted' *a plaintiff*** in that specific forum.") (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)) (emphasis added); *see also id* at 4 (citing *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1171–72 (C.D. Cal. 2024) (also dismissing template Tauler Smith trap-and-trace complaint on personal jurisdiction grounds "[b]ecause the law is clear that a defendant cannot be sued in any forum where its website is visible").

Plaintiff does not dispute that CuriosityStream's website did not individually target Plaintiff in any way. *That* concession by itself is dispositive here in CuriosityStream's favor, no different than *Gen Digital*. Indeed, it's the *same* complaint. For his part, Plaintiff instead engages in the legally irrelevant bait-and-switch that since *TikTok* – CuriosityStream's alleged vendor – fortuitously has its main office in California, somehow that amounts to purposeful direction on *CuriosityStream's* part. But this is like arguing every individual with an iPhone would be subject to personal jurisdiction in California for a trap-and-trace claim because Apple is sent the same types of "signaling information" when a person receives a call, text, iMessage or email, and that information is later sent to Apple's iCloud. Just as over 150 million Americans did not purposefully direct where Apple chose to have its principal place of business, or negotiate the governing law of Apple's Terms of Service, CuriosityStream did not purposefully direct where TikTok chose its principal office. And Plaintiff understandably does not contend otherwise. As Judge Breyer held last month in dismissing another trap-and-trace complaint on personal jurisdiction grounds, "third parties' conduct cannot establish personal jurisdiction over" a Defendant. *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 1083214, at *3 (N.D. Cal. Apr. 10, 2025) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Indeed, well before the Court of Appeal adopted the three-part *Schwarzenegger* test in 2004, it was clearly established that "the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir. 1990); *see also Speidel v. Markota*, 2021 WL 3463895, at *4 (C.D. Cal. 2021) (finding no personal jurisdiction where party's vendor relevant to case was located in California).

Plaintiff's reliance on the Ninth Circuit's recent *Shopify* decision also misses the mark. Opp. at 10-11 (citing *Briskin v. Shopify, Inc.*, No. 22-15815, 2025 WL 1154075, at *11 (9th Cir. Apr. 21, 2025)). There, the Ninth Circuit expressly based its decision on the fact that Shopify allegedly knew the location of consumers like Briskin *before* **installing tracking software onto their devices in California** that gave rise to the claim. *Id.* at n.13 ("The SAC alleges that Shopify knew that the consumer is in California before it actually transacts the payment process"). In other words, the allegations critical to the Ninth Circuit's analysis were that (1) Shopify expressly knew the plaintiff was located in California, (2) it targeted plaintiff's device by installing code on the plaintiff's device, again, knowing it was occurring in California, and (3) this all occurred as part of a transaction Shopify was facilitating that would also be targeted at California. *Id.* at *14 (holding that "Briskin's claims 'arise out of' Shopify's contact with Briskin's device, which Shopify allegedly knew was in California.").

Here by stark contrast, everything relevant to the claim occurred in Maryland when CuriosityStream's website allegedly collected **admittedly anonymous** metadata – which every website does, including the Court's. Put another way, the only targeting relevant to the claim occurred when *Plaintiff* targeted CuriosityStream's website – no different than if he called a Maryland resident's iPhone and it "captured" his California telephone number. Unlike Shopify, CuriosityStream took no suit-related action to reach out to a California resident. That is, Shopify affirmatively reached into California by installing tracking software on *Briskin's device*, which action gave rise to the claim against Shopify, and only after Shopify had knowledge of Briskin's location within California.

Accordingly, this case is no different than the First Circuit's decision in *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 93 (1st Cir. 2024), or the Third Circuit's comparable decision in *Hasson v. FullStory, Inc.*, 114 F.4th 181, 192 (3d Cir. 2024), both of which involved websites merely collecting information from website visitors, and doing nothing to expressly target the plaintiffs. *Cf. Kauffman v. Home Depot, Inc.*, No. 23-CV-0259-AGS-AHG, 2024 WL 221434, at *3 (S.D. Cal. Jan. 19, 2024) (holding that alleged "data capture [] began as soon as he entered

the website" and thus purported injury arose out of or related to where defendant was operating its website, and *not* what allegedly happened later). The "downstream use of data is not a part of the definitions of pen registers or trap and trace devices. It is the method of data collection itself that is at issue." *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3 (Cal.Super. Jan. 28, 2025).

In fact, the California Court of Appeal refuses to assert personal jurisdiction over out-of-state defendants in much closer cases. For example, in *Jacqueline B. v. Rawls Law Group, P.C.*, 68 Cal.App.5th 243 (2021), the Court of Appeal refused to exercise jurisdiction over a Virginia law firm related to a malpractice tort claim after the firm knowingly represented a California resident, and communicated with her with knowledge of her location in California. *Id.* at 255. As the court held, "Defendants did not purposefully direct any activities toward California residents. At most, the law firm operated a website that could be accessed by California residents, but the website did not target California residents specifically and it was plaintiff who first contacted defendants." *Id.*

Here too, Plaintiff visited a Maryland company's website, the website allegedly collected routine metadata in Maryland, and Plaintiff alleges no "interaction" with Defendant or further contact. "Thus, there is no link between defendants' allegedly tortious conduct and any contacts they might have with California." *Jacqueline B.*, 68 Cal.App.5th at 259. Indeed, *if* CuriosityStream engages in commerce with individuals who may happen to live in California, it does so expressly on the condition that "the laws of … the State of Maryland govern these Terms of Use **and any claim or dispute that you may have against us**" and any such dispute is to be "resolved by a court located in the state of Maryland."[10] It would be an entirely incongruous result if the only individuals who could force an educational-content provider across the country to defend set-up claims are drive-by website visitors who never get beyond the homepage.[11]

Ultimately, the only alleged conduct at issue here was the operation of common website analytics tools in Maryland, where the alleged collection of *otherwise anonymous* metadata took

[10] *See* Terms of Use, § 17 – Choice of Law, available at https://curiositystream.com/terms.
[11] As can be seen, the only thing one can do on CuriosityStream's homepage is to begin the subscription process, subject to CuriosityStream's Terms of Use. *See* https://curiositystream.com/.

place *on CuriosityStream's website*. Plaintiff's claim, such as it is, arose when that data was "captured" in Maryland. As a result, the analysis can never get beyond the second *Schwarzenegger* factor – that "the claim must be one which arises out of or relates to the defendant's forum-related activities" – because CuriosityStream has no forum-related activities giving rise to Plaintiff's claim. Accordingly, the Court should refuse to exercise personal jurisdiction over CuriosityStream and dismiss this case with prejudice.

## IV. TRAP AND TRACE DEVICES ARE EXPRESSLY LIMITED TO THIRD-PARTY INTERCEPTIONS, AND ARE STRICTLY LIMITED TO TELEPHONE LINES.

CuriosityStream established that as a matter of law, a trap-and-trace device is expressly limited by its incorporated definitions "to the **interceptions** of wire and electronic communications. It does not apply to stored communications or stored content." Mem. at 16, 29-31 (citing Penal Code §§ 629.51, 638.50). And under 50 years of binding CIPA precedent, a party to a communication indisputably cannot "intercept" it. Mem. at 12-13. Further, Section 638.51 independently cannot apply to Internet data exchanges based on the overall statutory scheme, the relevant legislative history and judicial interpretations of the applicable statutory language that the Legislature must be considered to have adopted. Mem. at 14-15, 30-32. In short, Section 638.51 is strictly limited to devices placed by third parties on *telephone lines.*

In a supreme act of chutzpah, Plaintiff's counsel opposed CuriosityStream's Motion with a sworn declaration conclusively establishing that, by using only the Google Chrome browser, they can see exactly the third parties with which CuriosityStream is communicating – but *not the contents* of those communications. *See* Shapiro Declaration, ¶ 2 (showing that CuriosityStream website is communicating with TikTok, Bing, Shopify, Facebook, etc.); *id.* at ¶ 4 (admitting that they used Chrome to determine that "the Website instantly sends communications to TikTok") (ECF No. 25). In other words, they have effectively admitted that anyone using Chrome is using an illegal trap-and-trace device under their own contrived interpretation of this statute. But luckily for Mr. Shapiro, CuriosityStream, the Court's IT Department, and Internet users everywhere, Plaintiff's arguments regarding this law are easily rebutted.

First, Plaintiff cites *Autotrader.com* where Judge Klausner attempted to defend his original

(mis)interpretation of the statute in *C2* as not sweeping in basic Caller ID service[12] because, "[u]nlike a caller ID system, which is installed on the call recipient's device, the Website installs the tracking software on the visitor's browser." *Autotrader.com, Inc.*, 2025 WL 65409, at *6. Of course, here Plaintiff is alleging the same fact pattern and positioning as Caller ID: "the TikTok Software gathers" information "by running code or 'scripts' **on the Website**." Compl. ¶ 11 (emphasis added). Thus, *C2* and *Autotrader.com*,[13] such as they are, support CuriosityStream, not Plaintiff. But the problem with Judge Klausner's analysis is that, while his ultimate conclusion is correct that Caller ID does not violate Section 638.51, he never explains *why* that would be the case *under the statute*. That is, if a "trap and trace device" is no more than a "process that captures the incoming electronic or other impulses that identify the originating number," Cal. Penal Code § 638.50(c), how could Caller ID *not* meet this definition? That's ***exactly*** what Caller ID does – it "captures" the originating number of the person calling you, and where the device or process is located is not relevant under *this* definition. But as CuriosityStream established, the location *is* relevant under the definitions of wire and electronic communication incorporated from Section 629.51 – which, again, are expressly limited to "the interceptions of wire and electronic communications." Cal. Penal Code § 629.51(b).

For his part, Plaintiff curiously argues that Section 629.51(b) "is clearly not incorporated into the Trap and Trace Law because it is not part of the 'definitions' from § 629.51." Opp. at 23.

---

[12] Plaintiff also suggests that because the FCC preempted the CPUC's conflicting Caller ID rules in the 1990s, somehow that would prevent Section 638.51 – enacted over twenty years later – from not sweeping in Caller ID either. Opp. at 3. But that is pure deflection from the fact that under Plaintiff's contrived view of Section 638.51, a telephone number would clearly be an "originating number" covered under the law. And when it's "collected" by a "device or process" – like an iPhone – there is nothing left to be done to "violate" this law under Plaintiff's view.

[13] The magistrate judge in *Rad Power Bikes* also expressly deferred to Judge Klausner's original analysis in *C2*: "as this court found in a similar case, 'Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51.'" *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024)." *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025). As can be seen by the date of this decision, however, the magistrate decided this decision the day before Judge Klausner ultimately reversed himself in *Autotrader*, such that the same result should have followed in *Rad Power Bikes*. Ultimately, the magistrate's holding that an alleged "violation of a privacy right protected by California law is sufficient injury for standing purposes" turns *Spokeo* and *TransUnion* on their head.

Plaintiff appears to be arguing that because Section 629.51(b) states that "*this chapter* applies to the interceptions of wire and electronic communications," this somehow only limits the *same definitions* later incorporated by reference via Section 638.50 when they are used in Chapter 1.4, but the *same terms* should be interpreted entirely differently when used in Chapter 1.5.

But this argument ignores that the Legislature also made this point clear – again – in Section 629.51(c) – without the prefatory "as used in this chapter" phrase that Plaintiff pins all his argument on. This bears repeating: the Legislature expressly *reiterated* that the "act that added this subdivision is not intended to change the law as to stored communications or stored content," *id.*, but only "applies to the interceptions of wire and electronic communications." *Id.* at § 629.51(b). It is simply not a reasonable way to construe a statute, particularly a criminal one, in a way that would ignore the express limitations the Legislature built into statutory definitions, but then assume the Legislature meant something completely different when it incorporated *the same definitions* into a related chapter of the same Penal Code. *See In re Yochum*, 89 F.3d 661, 666 (9th Cir. 1996) ("in statutes that contain statutory definition sections, it is commonly understood that such definitions establish meaning wherever the terms appear in the same Act."). Thus, *both* Sections 629.51(b) and (c) clearly and expressly limit the meanings of covered communications in Section 629.51(a) to those being *intercepted*, and it is *those meanings* that are incorporated by and carried over to Section 638.50.

This is thus the only interpretation that comports with the plain language of the statute, but that also explains why there is **no defense available for a party**, which Plaintiff also does not dispute. That's **because they don't need it**, as parties do not *intercept* any communications. This is thus the only interpretation that explains why hundreds of millions of Americans are not violating this law everyday by using Caller ID, being LinkedIn users, "capturing" someone's email address, or using any number of website browsers that collect the "originating number" – or IP address – of a website.[14] In fact, as the D.C. Circuit held in a closely analogous case, courts should not interpret

---

[14] Plaintiff also tries to rewrite the definition of a "trap and trace device" so it would only apply when it's used to de-anonymize a visitor. But that's not what the statutory definition says – as "reasonably likely to identify" only modifies "signaling information. An "originating number," like a telephone number would be sufficient information by itself if Plaintiff's theory had merit.

laws in a way that would "assume an eye-popping sweep" to their scope. *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 697 (D.C. Cir. 2018) (rejecting interpretation of statute that "could potentially sweep in smartphones").

Ultimately, Plaintiff cites a few decisions that did not address CuriosityStream's arguments at all, or are clearly erroneous and rejected by numerous other decisions[15] holding that this law does not apply to websites. One of the basic errors these decisions make is starting from the false premise that the Legislature was legislating in a vacuum. In reality, the Legislature copied *verbatim* the definitions of "pen register" and "trap and trace device" directly from federal law. *See* 18 U.S.C. § 3127(3)(4). And it was also well-established that these definitions **strictly related to telephone lines, and *not* the Internet**. *See In re The Application of the United States of America for an Order Authorizing the use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (holding definitions at issue "**include only devices that are attached to a telephone line**.") ("emphasis added"). And it is a well-settled rule of statutory construction that the Legislature "must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment." *Shapiro v. United States*, 335 U.S. 1, 16 (1948).[16]

Thus, the decisions cited by Plaintiff "faulting" the Legislature for using "broad" language get the rules of statutory construction exactly backwards. Under *Shapiro*, the Court **must** assume here that the Legislature was aware of the *courts' narrow* interpretation of these ***same* definitions** being limited to telephone lines when they adopted this law with the same definitions. Indeed, no

---

But it doesn't.

[15] *See* Mem. at 25; *see also Sanchez v. Cars.com Inc.*, Case No. 24STCV13201 at 4 (Cal.Super. Jan. 27, 2025) ("'pen register' and 'tra[p] and trace devices' refer to devices or process that are used to record or decode dialing, routing, addressing or signaling information **from telephone numbers, and not internet communications such as websites**.") (emphasis added).

[16] Again, decisions like *Fandom, C2* or *Rad Power Bikes* simply do not address this argument, and therefore can hardly be persuasive authority on this point. But ultimately, even if the courts are all over the map on this law, at worst, that still militates in favor of adopting the interpretation that favors Defendant under the Rule of Lenity. Put another way, if a criminal law is this unclear - that judges who interpret statutes for a living come to diametrically different conclusions when the interpreting the same law – then how is it possible that persons of ordinary intelligence can have fair notice of what is prohibited? *See Dehne v. Avanino*, 219 F. Supp. 2d 1096, 1110 (D. Nev. 2001) ("To enable citizens to steer between lawful and unlawful conduct, 'we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly.'") (citing *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).

one could review the legislative history at issue and conclude otherwise – which is presumably why Plaintiff ignored it entirely. Mem. at 14. In short, this law has no application to the Internet.

## V. <u>THE CCPA COMPREHENSIVELY REGULATES ONLINE PRIVACY ISSUES.</u>

CuriosityStream also established that the CCPA comprehensively and specifically regulates online data collection and sharing practices, and it is another basic tenet of statutory construction that specific statutes control over the general. Mem. at 11-12, 32-33. Plaintiff points to Section 1798.175 and its "savings clause," Opp. at 22 – which expressly states the CCPA is meant "to supplement existing laws relating to consumers' personal information," expressly referencing Section 22575. And this statute expressly referenced by the Legislature simply requires an "operator of a commercial Web site or online service that collects personally identifiable information … [to] post its privacy policy on its Web site." Cal. Bus. & Prof. Code § 22575. That simply reinforces CuriosityStream's point that the CCPA, and California online privacy law more broadly, only require a website operator to disclose its privacy policy on its website – rather than availing itself of the procedures **solely applicable to law enforcement agencies and communications service providers** in CIPA.

Indeed, it must be noted that Senate Bill 690 was recently introduced in the California Senate and advanced on April 30, for the express purpose of "[s]top[ing] the abusive lawsuits against California businesses and nonprofits under the California Invasion of Privacy Act (CIPA) for standard online business activities that **are already regulated by the California Consumer Privacy Act (CCPA)**."[17] While the thousands of businesses being targeted by Tauler Smith will presumably welcome this development, CuriosityStream respectfully submits that no legislation is actually needed. The Court simply needs to interpret this criminal law using the basic cannons of statutory construction, and as the Legislature already made clear in the legislative history: Section 638.51 only applies to law enforcement interception of telephone signaling information and has no application to CCPA-regulated online privacy issues.

---

[17] *See* https://sd14.senate.ca.gov/news/press-release/senator-anna-m-caballero-unveils-bold-legislative-package-2025 (emphasis added).

Respectfully submitted,

Dated: May 7, 2025

**ARENTFOX SCHIFF LLP**

By: */s/ Lynn R. Fiorentino*
Lynn R. Fiorentino
Susanne Boniadi
Attorneys for Defendant
CuriosityStream Inc.